United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 13, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 25-90083** |
| **ENGLOBAL CORPORATION**, *et al.*, | § | |
| | § | **Chapter 11** |
| Debtors.[1] | § | |
| | § | **(Jointly Administered)** |

## ORDER CONFIRMING JOINT CHAPTER 11 PLAN

On June 13, 2025, the Court conducted a hearing (the "Confirmation Hearing") to consider Confirmation of the *Joint Combined Chapter 11 Plan and Disclosure Statement*, dated May 28, 2025, and final approval of the disclosure statement (the "Disclosure Statement") therein, filed by ENGlobal Corporation, *et al.*, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered Chapter 11 Cases. As referred to herein, the "Plan" shall be the Plan attached to this Confirmation Order as **Exhibit 1**, along with all modifications referred to herein.[2] Having considered the Plan, and based on the evidence presented at the Confirmation Hearing, including the *Declaration of John D. Baumgartner in Support of Confirmation of Joint Chapter 11 Plan* [ECF # 153] (the "Baumgartner Declaration"), the Debtors' Ballot Summary [ECF # 152] (the "Ballot Summary"), the arguments and representations of counsel, and the entire record in the Chapter 11 Cases, the Court makes the following findings of fact and conclusions of law in support of final approval of the Disclosure Statement and Confirmation of the Plan pursuant to Bankruptcy Rule 7052, as made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: ENGlobal Corporation (2261); ENGlobal U.S., Inc. (0616); ENGlobal Government Services, Inc. (0196); and ENGlobal Technologies LLC (1664). The Debtors' service address is: 11740 Katy Fwy., Ste. 350, Houston, Texas 77079.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan attached hereto as **Exhibit 1**, or the Liquidating Trust Agreement attached to the Plan as applicable.

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Introduction

1.      On March 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The Debtors' chapter 11 cases (the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being jointly administered by the Court under Case No. 25-90083.

2.      Since the Petition Date, the Debtors have operated their businesses and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

### B.  Jurisdiction and Venue

3.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Confirmation of this Plan is a core matter under 28 U.S.C. § 157(b), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

### C.  Eligibility for Relief

4.      The Debtors were and continue to be eligible for relief under section 109 of the Bankruptcy Code.

**D.**     **Solicitation Materials and Related Matters**

5.     On May 28, 2025, the Debtors filed their *Joint Combined Chapter 11 Plan and Disclosure Statement* [ECF # 135] and their *Emergency Motion for Entry of an Order Approving (I) Adequacy of the Disclosure Statement on a Conditional Basis; (II) Form of Solicitation Materials; and (III) Procedures for Soliciting and Voting on the Joint Chapter 11 Plan* [ECF # 136].

6.     On May 30, 2025, the Court entered its *Order Approving (I) Adequacy of the Disclosure Statement on a Conditional Basis; (II) Form of Solicitation Materials; and (III) Procedures for Soliciting and Voting on the Joint Chapter 11 Plan* [ECF # 143] (the "Disclosure Statement Approval Order").  Pursuant to the Disclosure Statement Approval Order, the Debtors caused the Solicitation Materials (as defined in the Disclosure Statement Approval Order) to be served upon Holders of Claims and Interests in the Voting Classes.

7.     On June 3, 2025, the Debtors filed a *Notice of Filing Plan Supplement* [ECF # 146] and their *Notice of Filing Approved Solicitation Materials* [ECF # 147]. The Solicitation Materials and the Plan Documents contained in the Plan Supplement comply with the terms of the Plan and the Disclosure Statement Approval Order, and the filing and notice of such documents was good and proper.

8.     On June 12, 2025, the Debtors filed their Ballot Summary. The procedures by which Ballots were received and tabulated in the Ballot Summary was fair and properly conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Approval Order.

4834-5676-5174, v. 3

**E.**     <u>**Disclosure Statement**</u>

9.      The Disclosure Statement contains: (i) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules and regulations, including the Securities Act; and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

**F.**     <u>**Objections to Confirmation of the Plan and Disposition Thereof**</u>

10.      Pursuant to Disclosure Statement Approval Order, the Court established June 13, 2025, at 12:00 p.m. (prevailing Central Time) as the deadline to object to the Confirmation of the Plan (the "<u>Confirmation Objection Deadline</u>").  No formal objections to Confirmation of the Plan ("<u>Confirmation Objections</u>") were filed prior to the Confirmation Objection Deadline. To the extent any untimely Confirmation Objections were filed, and were not withdrawn or otherwise resolved, the record demonstrates by a clear preponderance of the evidence that the Plan should be confirmed, and the Confirmation Objections should be, and hereby are, overruled.

**G.**     <u>**Confirmation Hearing**</u>

11.      On June 13, 2025, at 1:00 p.m. (prevailing Central Time), the Court held the Confirmation Hearing. At the Confirmation Hearing, the Debtors established the following record in support of Confirmation of the Plan: (a) all documents identified on the Debtors' Witness and Exhibit List filed in the Chapter 11 Cases in support of Confirmation; (b) the Baumgartner Declaration; (c) the testimony at the Confirmation Hearing; (d) the evidence in respect of transmittal and service of the Solicitation Materials; (e) the Ballot Summary; (f) the entire record of the Chapter 11 Cases and the docket maintained by the clerk of the Court and/or

its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered by the Court, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, as to all of which the Court takes judicial notice; (g) the statements and argument of counsel on the record at the Confirmation Hearing; and (h) all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with Confirmation of the Plan.

**H.**     **Applicable Confirmation Requirements**

12.     To confirm the Plan, the Debtors are required to demonstrate that the Plan satisfies the provisions of Bankruptcy Code section 1129 by a preponderance of the evidence. *See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II),* 994 F.2d 1160, 1163-65 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down"). Here, the Debtors have satisfied their burden of proof with respect to Confirmation of the Plan.

*i.*     *11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11*

13.     The classification and treatment of Claims and Interests are described in Articles III and IV of the Plan, and the Plan implementation procedures are described in Article V of the Plan. The classification of Claims and Interests described in the Plan satisfies the standards of section 1122 of the Bankruptcy Code, and the Plan complies with the applicable provisions of section 1123 of the Bankruptcy Code. The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied. The Debtors have complied with the terms of the Disclosure Statement Approval Order, and the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules for the Southern District of Texas, and the Procedures for

Complex Chapter 11 Cases in the Southern District of Texas. As a result, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

      *ii.*      *11 U.S.C. § 1129(a)(3): Plan Proposed in Good Faith*

14.      The Debtors have proposed the Plan with the legitimate and honest purpose of restructuring their financial affairs and making distributions to Holders of Claims and Interests. The Plan has not been proposed by any means forbidden by law. The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. The Plan is the result of good faith, arm's-length negotiations among the Debtors, Holders of Claims and Interests, and other parties in interest. Accordingly, the Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

      *iii.*      *11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments*

15.      Any payment made, or to be made, by the Debtors for services or for costs and expenses during or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of the Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

      *iv.*      *11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders*

16.      As required by section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identity of the Liquidating Trustee as the individual proposed to serve as the sole director and officer of the Liquidating Debtors and Reorganized Debtor on and after the Effective Date. Further, the Debtors have adequately disclosed the identities of the Current Directors and Officers who are Insiders of the Debtors.

v.      *11 U.S.C. § 1129(a)(6): Regulatory Rate Approval*

17.     The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

vi.     *11 U.S.C. § 1129(a)(7): Best Interest of Creditors Test*

18.     The Debtors prepared a liquidation analysis [ECF # 142-1] (the "Liquidation Analysis") with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code, and the Liquidation Analysis was included the Debtors' Solicitation Materials. *See* ECF # 147-1.  The Court accepts the results of the Liquidation Analysis. Based on the Liquidation Analysis, with respect to each Impaired Class of Claims or Interests, (a) each Holder of a Claim or Interest of such Class has either accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The requirements of section 1129(a)(7) of the Bankruptcy Code are therefore satisfied.

vii.    *11 U.S.C. § 1129(a)(8): Acceptance of Plan by All Classes*

19.     Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each Class of Claims or Interests, such Class has either accepted the Plan or is not Impaired under the Plan. As demonstrated in the Ballot Summary, with respect to all Classes of Claims and Interests who were entitled to vote on the Plan, Holders of Claims and Interests either voted to accept the Plan, did not vote, or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) are satisfied.

20.     Alternatively, to the extent the requirements of section 1129(a)(8) of the Bankruptcy Code have not been satisfied, the Plan meets the "cramdown" requirements of

7

section 1129(b) of the Bankruptcy Code. Specifically, the Plan is fair and equitable to the extent that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or Interest. Further, the Plan does not unfairly discriminate with respect to any Class of Claims or Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank. Accordingly, and notwithstanding any non-acceptance by an Impaired Class of Claims described in the Ballot Summary, the Debtors' Plan meets the requirements to effect a "cramdown" consistent with the provisions of section 1129 of the Bankruptcy code.

viii.    *11 U.S.C. § 1129(a)(9): Payment of Priority Claims*

21.     Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code. Under section 1129(a)(9)(A) of the Bankruptcy Code, holders of section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim. Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of section 507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the plan or, if not, cash equal to the allowed amount of such claim.   The Debtors' Plan satisfies these requirements, and, therefore, complies with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

22.     Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b) over a period ending not later than five (5) years after the date of the order for relief under Bankruptcy Code sections 301, 302 or 303; and (iii) in a manner not less favorable than the most

8

favored nonpriority unsecured claim provided for by the Plan. The Debtors' Plan satisfies such requirements and therefore complies with section 1129(a)(9)(C) of the Bankruptcy Code.

      *ix.*     *11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan*

23.      Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under the plan, at least one class must have accepted the plan, without including any votes of insiders. Here, without including acceptance of the Plan by any Insider, Class 4 has voted to accept the Plan. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

      *x.*     *11 U.S.C. § 1129(a)(11): Feasibility*

24.      At the Confirmation Hearing, the Debtors introduced certain exhibits, including the Baumgartner Declaration, in order to demonstrate the feasibility of the Plan. Based on the testimony and the supporting documentary evidence presented, the Court finds that the Plan adequately implements the restructuring of the Debtors' financial obligations and the wind-down of the Debtors' remaining operations. The testimony adduced at the Confirmation Hearing and the testimony set forth in the Baumgartner Declaration is credible, and the Debtors can be expected to achieve results sufficient to satisfy the obligations required under the Plan. Further, Confirmation of the Plan is not likely to be followed by a chapter 7 liquidation or further need for financial restructuring by the Debtors. Accordingly, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

      *xi.*     *11 U.S.C. § 1129(a)(12): Payment of Fees*

25.      The Plan provides that, until the Chapter 11 Cases are closed, all Statutory Fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by the Liquidating Trustee. Thus, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

9

*xii.* *11 U.S.C. § 1129(a)(13): Retiree Benefits*

26.     The Debtors do not maintain a retirement plan as defined by section 1114 of the Bankruptcy Code, and therefore the Plan does not require the payment of retiree benefits.

*xiii.* *11 U.S.C. § 1129(a)(14): Domestic Support Obligations*

27.     The Debtors are not required to pay domestic support obligations, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

*xiv.* *11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim*

28.     The Debtors are not individuals, and therefore section 1129(a)(15) of the Bankruptcy Code is inapplicable.

*xv.* *11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities*

29.     The Debtors are moneyed, commercial companies, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

*xvi.* *11 U.S.C. § 1129(b)*

30.     Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan … if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest is impaired under, and has not accepted, the plan." *See* 11 U.S.C. § 1129(b). For purposes of section 1129(b), the Plan is fair and equitable to the extent that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or Interest.  The Court finds that the Plan does not discriminate unfairly, is fair and equitable, and otherwise satisfied the elements of 1129(b) of the Bankruptcy Code.

<ul><li><i>xvii.</i>   <u><i>11 U.S.C. § 1129(d)</i></u></li></ul>

31.     The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act. As a result, the Plan complies with section 1129(d) of the Bankruptcy Code.

**I.     <u>Conclusion</u>**

32.     The Debtors have demonstrated that the provisions of the Plan comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

**II.  <u>ORDER</u>**

Based on the findings of fact and conclusions of law, the Court has determined that the Disclosure Statement and Plan satisfy the applicable provisions of the Bankruptcy Code and should therefore be approved on a final basis and confirmed. It is therefore hereby **ORDERED** that:

33.     The foregoing findings of fact and the conclusions of law constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014.  All additional findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to approval of the Disclosure Statement and Confirmation of the Plan, including the Court's rulings with respect to Confirmation, are hereby incorporated into this Confirmation Order.  All findings of fact or conclusions of law constitute rulings of the Court and are part of this Confirmation Order and adopted as such.

A.      **Disclosure Statement**

34.      The Disclosure Statement set forth in the Plan is APPROVED on a final basis in all respects.

B.      **Confirmation of the Plan and Approval of Plan Documents**

35.      The Plan is CONFIRMED in its entirety under section 1129 of the Bankruptcy Code, and all of the terms and conditions contained in the Plan are APPROVED. The Debtors, the Reorganized Debtor, the Liquidating Debtors, and the Liquidating Trustee, as applicable, are authorized to implement the Plan in accordance with the terms and provisions of the Plan, Liquidating Trust Agreement, and this Confirmation Order. The Debtors, in consultation with the Liquidating Trustee, are authorized to modify the Plan through and including the Effective Date in accordance with Bankruptcy Code section 1127 without further order of the Court to the extent necessary to make any changes required or appropriate to implement, effectuate, and consummate the Plan, the terms of this Confirmation Order, the Liquidating Trust Agreement, and the transactions respectively contemplated under each of the foregoing.

36.      All Plan Documents in furtherance of Consummation of the Plan, or to be executed in order to consummate the transactions contemplated under the Plan, as applicable, are necessary and appropriate to effectuate the transactions contemplated under the Plan and are APPROVED and deemed part of the Plan as if fully set forth therein.  The Debtors, in consultation with the Liquidating Trustee, are authorized to modify the Plan Documents through and including the Effective Date, and to execute such other certificates, documents, and instruments that may be necessary or appropriate to effectuate the transactions contemplated under the Plan.  All of the Plan Documents contained in the Plan Supplement comply with the terms of the Plan, and the filing and notice of such Plan Supplement was good and proper and in

12

accordance with the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is required. The Plan and Plan Documents have been negotiated in good faith at arm's length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms. The Plan, including all transactions contemplated by the Plan and Plan Documents, represents the exercise of the sound business judgment of the Debtors, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest.

**C.**      **Resolution of Confirmation Objections**

37.      No Confirmation Objections were filed prior to the Confirmation Objection Deadline. To the extent any untimely Confirmation Objections were filed and were not withdrawn or otherwise resolved at or before the Confirmation Hearing, such Confirmation Objections are expressly overruled, except as set forth in this Confirmation Order.  All other informal Confirmation Objections received by the Debtors are resolved as set forth in this Confirmation Order.

**D.**      **Establishment of the Liquidating Trust**

38.      The Plan provides for the creation of the Liquidating Trust. Confirmation of the Plan shall effect the formation of the Liquidating Trust and shall be governed by the Liquidating Trust Agreement.  The form and content of the Liquidating Trust Agreement attached as an Exhibit to the Plan is approved and incorporated by reference herein.

39.      John D. Baumgartner shall serve as the Liquidating Trustee until death, resignation, discharge, or the appointment of a successor in accordance with the Liquidating Trust Agreement. In the exercise of his authority on behalf of the Liquidating Trust, the Liquidating Trustee will have certain responsibilities and powers and shall administer the

Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries pursuant to the terms and conditions of the Plan, Liquidating Trust Agreement, and this Confirmation Order.  In addition to the rights and duties provided in the Plan, Liquidating Trust Agreement, and this Confirmation Order, the Liquidating Trustee shall be entitled to all rights, privileges, and immunities provided under applicable non-bankruptcy law, including, but not limited to, all rights, privileges, and immunities provided to a trustee under Texas law.

E.      **Implementation of the Plan**

40.      Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors, Reorganized Debtor, Liquidating Debtors, and Liquidating Trustee, as applicable, may take all actions as may be necessary or appropriate to affect any action described in, approved by, contemplated by, or necessary to effectuate the Plan and the Liquidating Trust, including, for the avoidance of doubt, consummating the Second Closing with Buyer in accordance with the applicable terms and conditions as more set forth in the Sale Order and APA.

41.      All such actions taken or caused to be taken consistent with the terms of the Plan, Liquidating Trust Agreement, and Confirmation Order, including any such actions taken prior to the entry of the Confirmation Order, shall be deemed to have been authorized and approved by the Court without further order under any applicable laws or regulations.

42.      On the Effective Date, except to the extent otherwise provided in the Plan or Plan Documents, all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtors or Liquidating Trustee, if any, shall be deemed satisfied in full, cancelled, discharged, and of no force or effect.  Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights

14

4834-5676-5174, v. 3

arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided pursuant to the Plan, Liquidating Trust Agreement, and this Confirmation Order.

43.    Upon entry of this Confirmation Order, and in consideration for the terms and conditions contained in the Plan, the DIP Lender has agreed to provide the Liquidating Trust with sufficient funding to be used by the Liquidating Trustee to ensure payment of Allowed Administrative Claims against the Debtors in accordance with Article III(A) of the Plan.   In accordance with Article IV of the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Debtors and Liquidating Trust, is authorized to: (i) enter into any agreements with the DIP Lender without further order of the Court, (ii) obtain the funding necessary to provide for the payment of Allowed Administrative Claims against the Debtors from the Liquidating Trust, (iii) incur the repayment obligations from the Liquidating Trust Assets, and (iv) to take any and all actions necessary to implement the agreement of the parties.  The Liquidating Trustee shall make reasonable efforts to repay the DIP Lender from the Liquidating Trust Assets according to the terms of the parties' agreement(s).  This Confirmation Order, and the approval of the agreement of the parties with respect to payment of Allowed Administrative Claims as set forth herein, and on the terms and conditions as may be more fully set forth in definitive documentation, shall be valid and binding upon the Debtors, their Estates, the Liquidating Trust, Holders of Claims and Interests, all other parties in interest, and the successors and assigns of each of the foregoing, as applicable, from and after entry of this Confirmation Order. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Court shall retain jurisdiction to interpret, enforce, adjudicate or resolve disputes, or otherwise hear or decide any matters pertaining to Liquidating Trust funding agreements.

15

**F.**     **Effects of Confirmation of the Plan**

44.     The provisions of the Plan, Plan Documents, Liquidating Trust Agreement, and this Confirmation Order are binding on the Debtors, Reorganized Debtor,  Liquidating Debtors, Liquidating Trustee, the Buyer, each Holder of a Claim or Interest, each non-Debtor counterparty to an Executory Contract or Unexpired Lease with any Debtor, any other interested party in the Chapter 11 Cases, and each of the foregoing's respective agents, heirs, successors, and assigns, regardless of whether such Entity filed a Proof of Claim or voted to accept the Plan.

45.     Upon entry of this Confirmation Order, the Debtors, Reorganized Debtor, Liquidating Debtors, Liquidating Trustee, Buyer, and their respective directors and officers, agents, attorneys, and Professionals, as applicable, are authorized and directed to effect any and all steps and corporate actions contemplated or required by the Plan or Plan Documents, or necessary to implement the terms of the Plan, whether occurring before or after the Effective Date, and regardless of whether such actions are specifically referred to in the Plan or this Confirmation Order.  For the avoidance of doubt, such actions expressly include, but are not limited to, executing the Liquidating Trust Agreement and consummating the Second Closing in accordance with the APA and Sale Order.

46.     Except as otherwise provided by the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against or Interests in the Debtors, their Estates, Estate Property, the Liquidating Trust, and the Liquidating Trust Assets.

47.     Except as otherwise provided in the Plan, this Confirmation Order, or separate Final Order of the Court, all injunctions or automatic stays provided for in the Chapter 11 Cases

16

under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date.

48.     Except as otherwise provided in section 1141of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan and Liquidating Trust Agreement shall bind every Holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether such Holder has voted to accept or reject the Plan.

**G.      Vesting of Assets Free and Clear; Release of Liens, Claims and Encumbrances**

49.     Except as otherwise provided in the Sale Order or this Confirmation Order, all remaining Estate Property of any Debtor will vest in Liquidating Trust under the Plan, free and clear of all Claims, Liens, Interests, charges, and other encumbrances, including, for the avoidance of doubt, all Retained Causes of Action and any Excluded Assets set forth in the APA.

50.     Except as otherwise provided in the Plan, Liquidating Trust Agreement, or Confirmation Order, or in any contract, instrument or other agreement or document entered into in connection with the Consummation of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Estate Property shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Liquidating Debtors, Liquidating Trust, or the Reorganized Debtor, as applicable, and their respective successors and assigns.

51.     Each Holder of a Secured Claim, or a Claim that is purportedly secured by any security interest or Lien shall, on or before the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, be authorized and directed to release to the

4834-5676-5174, v. 3

Debtors any collateral or other Assets of a Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably required or requested by the Debtors or Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  To the extent any of the foregoing actions, whether arising prior to the Effective Date or thereafter, require action to be taken by the Holders or applicable agents for such Holders of Secured Claims, the Debtors, Reorganized Debtor, Liquidating Debtors, or Liquidating Trustee, as applicable, shall have no obligation to pay the fees and expenses of the Holders or applicable agents for such Holder or such Secured Claims.  No distributions under the Plan shall be made to or on behalf of any Holder of a Secured Claim by the Debtors or Liquidating Trustee unless and until such Holder complies with any outstanding demand that it execute and deliver to the Debtors or Liquidating Trustee, as applicable, such release of Liens.

52.     On and after the Effective Date and, except as otherwise provided in the Plan or this Confirmation Order, the Liquidating Trustee may: (i) operate, manage, and wind up the affairs of the Reorganized Debtor and Liquidating Debtors, as applicable, in the ordinary course; (ii) use, acquire, or dispose of property in accordance with the Sale Order and APA or otherwise; and (iii) compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**H.     <u>Continued Corporate Existence</u>**

53.     The Debtors shall continue to exist after the Effective Date in accordance with the applicable laws of the respective jurisdictions in which they are formed or organized and pursuant to their respective bylaws (or other formation documents) in effect prior to the Petition

Date, except to the extent such bylaws (or other formation documents) are amended or restated. Debtors ENGlobal Corporation, ENGlobal U.S. and ENGlobal Technologies shall continue to exist as Liquidating Debtors, and Debtor ENGlobal Government Services shall continue to exist as the Reorganized Debtor for purposes of consummating the Second Closing with Buyer.

54.     As of the Effective Date: (i) all Current Directors and Officers and any members of the Board of Directors, as applicable, are deemed to have resigned their respective positions with the Debtors; (ii) the Liquidating Trustee shall be the sole remaining director of the Liquidating Debtors and Reorganized Debtor (for purposes of consummating the Second Closing); and (iii) all of the Debtors' corporate organizational documents are deemed amended to allow for the Liquidating Trustee to be designated as the sole officer and director to effectuate and implement the terms of the Plan and Plan Documents.

**I.     Assumption of Executory Contracts and Unexpired Leases**

55.     As of the Effective Date, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are expressly assumed by the Debtors and assigned to the Liquidating Trust to the extent not previously assumed and assigned to Buyer pursuant to the Sale Order and APA. Such policies shall continue in full force and effect in accordance with their respective terms and applicable non-bankruptcy law. The Liquidating Trust shall remain liable for all obligations (including Claims) thereunder regardless of when such obligations (including Claims) arise or become due or liquidated as if the Chapter 11 Cases had not occurred.  Consistent with the foregoing, any obligations that come due under the terms of such insurance policies after the effective time of the assumption shall be deemed to arise after the Effective Date, such that the Liquidating Trust shall not be released from any such obligations.

56.     Each Executory Contract and Unexpired Lease assumed pursuant to the Plan shall vest in, and be fully enforceable by, the Liquidating Trust as of the Effective Date in accordance with its terms, except as may be modified by the provisions of the Plan, any order of the Court authorizing and providing for its assumption, or any applicable law.  Each Executory Contract and Unexpired Lease that is assumed by the Debtors shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease.

57.     Any term of any policy, contract, or other obligation applicable to any Debtor(s) shall be void and of no further force or effect to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the applicable Debtor(s) as a result of, or gives rise to a right of any Entity based on any of the following: (i) the insolvency or financial condition of a Debtor (prior to the Effective Date); (ii) the commencement of the Chapter 11 Cases; or (iii) the Confirmation or Consummation of the Plan.

58.     After consummation of the Second Closing pursuant to the APA and Sale Order, the Debtors shall file a notice on the docket of the Chapter 11 Cases containing a list of all Executory Contracts and Unexpired Leases that were assumed and assigned to Buyer as Assigned Contracts.

J.      **Rejection of Executory Contracts and Unexpired Leases**

59.     In accordance with Article VI of the Plan, and except as expressly provided in the Plan or this Confirmation Order, all other Executory Contracts or Unexpired Leases that currently exist between the Debtors and another Person or Entity, shall be deemed rejected by the Debtors unless they have been assumed or rejected by the Debtors pursuant to: (i) the Sale Order

20

and APA; or (ii) any other Final Order of the Bankruptcy Court. Unless otherwise indicated or provided in a separate Final Order of the Court, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

60.     Unless otherwise provided by a separate Final Order of the Court, any Claim resulting from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be filed with the Claims and Noticing Agent within thirty (30) calendar days after the later of: (i) the date of any Final Order of the Court (including this Confirmation Order) approving such rejection, (ii) the effective date of such rejection, (iii) the Effective Date of the Plan, or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that is not timely filed will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trust Assets without the need for any objection by the Liquidating Trustee, or further notice to, action, order or approval of the Court or any other Entity. Any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtors' Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims in Class 4 of the Plan.

**K.**     **Claims Resolution Procedures Approved**

61.     The procedures for resolving contingent, unliquidated, or Disputed Claims by the Debtors or Liquidating Trustee, as outlined in Article VII of the Plan, are hereby approved.

**L.**     **Injunction and Exculpation Provisions Approved**

62.     On and after the Effective Date, and except as provided in this Confirmation Order, all injunctions set forth in Article VIII(D) of the Plan, and the exculpation provisions set forth in Article VIII(E) of the Plan, are hereby approved, and shall be effective and binding on all Persons and Entities, to the fullest extent provided therein.

63.     Claims against Exculpated Parties, if any, for acts described in Article VIII(E) of the Plan shall be filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and this Court retains exclusive jurisdiction to consider such claims.

64.     Upon Confirmation of the Plan, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of any Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan and Liquidating Trust Agreement, shall be deemed to have consented to the injunction provisions set forth in the Plan.

**M.**     **Professional Compensation**

65.     All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be filed no later than the Professional Compensation Claim Bar Date, consistent with the procedures under Article III(C) of the Plan. Objections to Professional Compensation Claims must be filed and served on the Liquidating Trustee and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and

22

a hearing in accordance with the procedures established by the Court. Allowed Professional Compensation Claims shall be paid by the Liquidating Trustee, on behalf of the Debtors, in Cash within ten (10) Business Days of the entry of a Final Order allowing such Claims.

**N.      Post-Effective Date Professional Fees and Expenses**

66.      Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors, the Reorganized Debtor, the Liquidating Debtors, and the Liquidating Trustee, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or Liquidating Trust.   Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and Liquidating Trustee, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**O.      Retention of Causes of Action**

67.      Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Retained Causes of Action attached as an Exhibit to the Plan are not being released, are expressly preserved, and constitute Liquidating Trust Assets that will be transferred to the Liquidating Trust. As relates to such Retained Causes of Action, nothing in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective date on behalf of the Estates or themselves in accordance with any provision of the Bankruptcy Code or any non-bankruptcy law.  The Liquidating Trustee shall

have, retain, reserve, and be entitled to assert all such Retained Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced. Failure to expressly identify and include any Causes of Action as Retained Causes of Action shall not constitute a waiver or release of such Causes of Action. No Person or Entity may rely on the absence of specific reference to any Retained Cause of Action in the Plan or Plan Documents as any indication that the Liquidating Trustee will not pursue any and all available Retained Causes of Action.

**P.    Setoffs and Recoupments**

68.    Except as expressly provided in the Plan or this Confirmation Order, the Liquidating Trustee, on behalf of the Liquidating Trust, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Liquidating Trust may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either: (i) agreed in amount by the Liquidating Trustee, on behalf of the Liquidating Trust and Holder of such Allowed Claim; or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; *provided, however,* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by either Liquidating Trustee, on behalf of the Liquidating Trust, or its successor of any and all claims, rights, and Causes of Action that such Liquidating Trustee, on behalf of the Liquidating Trust, or its successor may possess against the applicable Holder.   Except as otherwise authorized in the Plan or this Confirmation Order, in no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors, the Reorganized Debtor, the Liquidating

Debtors, or the Liquidating Trust, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII(E) of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## Q.    <u>Miscellaneous Confirmation Provisions</u>

69.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Allowed Claims of the Texas Taxing Authorities[3] with respect to ad valorem taxes (the "<u>Texas Taxing Authority Claims</u>") shall be classified as Class 2 - Other Secured Claims and shall be paid in full on or before the Effective Date from the Segregated Account as defined in the Sale Order. The Texas Taxing Authority Claims shall include post-petition interest properly charged under applicable non-bankruptcy law through the date of payment. The prepetition tax liens of the Texas Taxing Authorities shall be expressly retained against the Segregated Account in accordance with applicable non-bankruptcy law until the applicable Texas Taxing Authority is paid in full. All rights and defenses of the Debtors under applicable law are reserved and preserved with respect to such Texas Taxing Authority Claims.

70.    This Confirmation Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Unit for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Each federal, state, commonwealth, local, foreign, or other Governmental Unit or agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate

---

[3] The Texas Taxing Authorities include the following entities: Harris County, Rusk County, City of Houston and Spring Branch Independent School District.

to effectuate, implement or consummate the transactions contemplated by the Plan, any applicable Plan Documents, and this Confirmation Order.

71.     Under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan or any applicable Plan Documents, shall not be taxed under any law imposing a stamp tax or similar tax. The appropriate state or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

72.     To the extent that, under applicable non-bankruptcy law, any of the actions contemplated in the Plan would otherwise require the consent or approval of the Holders of Interests in the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the Holders of Interests in the Debtors.

73.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order, and all other agreements and documents executed and delivered pursuant to the Plan, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

74.     The Debtors, the Reorganized Debtor, the Liquidating Debtors, and the Liquidating Trustee, as applicable, shall have the right, to the fullest extent permitted by section 1142 of the Bankruptcy Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate Entity to execute and deliver an

4834-5676-5174, v. 3

instrument or perform any other act necessary to implement the Plan, the Plan Documents, or the provisions of this Confirmation Order.

75.     On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.

76.     If any or all of this Confirmation Order is hereafter reversed, modified, or vacated by subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Debtors, the Reorganized Debtor, the Liquidating Debtors or Liquidating Trustee receive written notice of any such order, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such act or obligation.   Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

77.     The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety.

4834-5676-5174, v. 3

78.     The provisions of the Plan and this Confirmation Order, including the Findings of Fact and Conclusions of Law entered contemporaneously with this Confirmation Order, are nonseverable and mutually dependent.

79.     All Statutory Fees charged pursuant to 28 U.S.C. § 1930 shall be timely paid by the Liquidating Trustee for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first. After the Effective Date, the Liquidating Trustee shall file all quarterly reports.

80.     On the Effective Date, and following the payment of all amounts under the Plan required to be paid on the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

81.     This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062.

82.     In the event of any direct conflict or inconsistency between any provision of this Confirmation Order, on the one hand, and the provisions of the Liquidating Trust Agreement, on the other hand, the provisions of this Confirmation Order shall govern and control. In the event of any direct conflict or inconsistency between any provision of the Liquidating Trust Agreement, on the one hand, and the provisions of the Plan, on the other hand, the provisions of the Plan shall govern and control, except with respect to the administration and structure of the Liquidating Trust, for which the Liquidating Trust Agreement shall govern and control.

28

Notwithstanding the foregoing, the Liquidating Trustee may apply or move the Court for resolution of any dispute concerning the foregoing.

83.    On the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Court.

Signed: June 13, 2025

_Alfredo R Pérez_
Alfredo R Pérez
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-90083 |
| ENGLOBAL CORPORATION, *et al.,* | § | |
| | § | Chapter 11 |
| Debtors.[1] | § | |
| | § | (Jointly Administered) |

## JOINT COMBINED CHAPTER 11 PLAN AND DISCLOSURE STATEMENT

**OKIN ADAMS BARTLETT CURRY LLP**

Christopher Adams
Texas Bar No. 24009857
Ryan A. O'Connor
Texas Bar No. 24098190
John Thomas Oldham
Texas Bar No. 24075429
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158
Email: cadams@okinadams.com
Email: roconnor@okinadams.com
Email: joldham@okinadams.com

**ATTORNEYS FOR THE DEBTORS**

Dated: May 28, 2025

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: ENGlobal Corporation (2261); ENGlobal U.S., Inc. (0616); ENGlobal Government Services, Inc. (0196); and ENGlobal Technologies LLC (1664). The Debtors' service address is: 11740 Katy Fwy., Ste. 350, Houston, Texas 77079.

# TABLE OF CONTENTS

Page

ARTICLE I.  DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW
    A. Defined Terms ................................................................2
    B. Rules of Interpretation and Construction of Terms ....................................12
    C. Computation of Time ..........................................................12
    D. Governing Law ...............................................................12
    E. Reference to Monetary Figures ................................................12
    F. Incorporation of Documents by Reference ......................................12

ARTICLE II.  DISCLOSURES REGARDING THE DEBTORS AND CHAPTER 11 CASES
    A. Purpose of This Disclosure Statement .........................................14
    B. Important Dates ..............................................................15
    C. Who May Vote ...............................................................15
    D. How to Vote .................................................................15
    E. Acceptance of Plan and Votes Required for Class Acceptance ......................15
    F. The Debtors' Business ........................................................16
    G. Events Leadings to the Chapter 11 Cases ......................................18
    H. Significant Events in the Chapter 11 Cases.....................................19
    I. Best Interests of the Estate .....................................................22
    J. Confirmation Requirements ....................................................22
    K. Alternative Plans of Reorganization ...........................................23
    L. Liquidation Under Chapter 7 of the Bankruptcy Code ............................24
    M. Summary and Conclusion of Disclosure Statement ..............................24

ARTICLE III.  ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS
    A. Administrative Claims .........................................................25
    B. DIP Loan Claim .............................................................25
    C. Professional Compensation Claims .............................................25
    D. Priority Tax Claims ..........................................................25

ARTICLE IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
    A. Classification in General ......................................................26
    B. Summary of Classification of Claims and Interests ...............................26
    C. Treatment of Claims and Interests .............................................27
    D. Special Provision Governing Unimpaired Claims .................................28
    E. Elimination of Vacant Classes .................................................29
    F. Voting Classes ...............................................................29
    G. Controversy Concerning Impairment............................................29
    H. Subordinated Claims .........................................................29
    I. Cramdown ...................................................................29
    J. No Waiver ...................................................................29

ARTICLE V.  MEANS FOR IMPLEMENTATION OF THE PLAN
    A. Vesting of Assets in the Liquidating Trust ......................................30
    B. Discharge of CRO............................................................30
    C. The Liquidating Debtors and Reorganized Debtor...............................30

D. The Liquidating Trust ...........................................................................................31

ARTICLE VI.  TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES
A. Executory Contracts and Unexpired Leases  ...................................................34
B. Insurance Policies..............................................................................................34
C. Claims Based on Rejection of Executory Contracts or Unexpired Leases.................34
D. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
Leases .....................................................................................................................34
E. Reservation of Rights .........................................................................................35

ARTICLE VII.  CLAIM/INTEREST OBJECTION PROCEDURES; TREATMENT OF
DISPUTED CLAIMS/INTERESTS; AND PROCEDURE FOR ASSERTING CLAIMS
A. Objection Process ...............................................................................................35
B. Delivery of Distributions and Undeliverable or Unclaimed Distributions ....................35
C. Distributions to Holders of Disputed Claims .....................................................36
D. Foreign Currency Exchange Rate ......................................................................37
E. Setoffs and Recoupment ....................................................................................37
F. Claims Paid or Payable by Third Parties ...........................................................37
G. Estimation of Claims and Interests ....................................................................38
H. Adjustment to Claims or Interests Without Objection .......................................38
I. Disallowance of Claims or Interests ....................................................................39
J. Amendments to Claims or Interests  ...................................................................39

ARTICLE VIII. EFFECT OF CONFIRMATION
A. Compromise and Settlement of Claims, Interests, and Controversies ...........................39
B. Legally Binding Effect  .......................................................................................39
C. Release of Liens .................................................................................................40
D. Injunction and Continuation of Automatic Stay.................................................40
E. Exculpation.........................................................................................................41
F. Preservation of Debtors' Claims and Causes of Action....................................41

ARTICLE IX.  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
OF THE PLAN
A. Conditions Precedent to Effectiveness ..............................................................42
B. Waiver of Conditions ..........................................................................................43
C. Effect of Failure of Conditions...........................................................................43

ARTICLE X.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN
A. Modifications and Amendments .........................................................................43
B. Effect of Confirmation on Modifications.............................................................43
C. Revocation or Withdrawal of the Plan ...............................................................43

ARTICLE XI. RETENTION OF JURISDICTION......................................................................44

ARTICLE XII.  MISCELLANEOUS PROVISIONS

A. Additional Documents ..................................................................................46
B. Payment of Statutory Fees ...........................................................................46
C. Reservation of Rights ...................................................................................46
D. Successors & Assigns ...................................................................................46
E. Notices ..........................................................................................................46
F. Entire Agreement ..........................................................................................47
G. Exhibits ........................................................................................................47
H. Nonseverability of Plan Provisions..............................................................47
I. Plan Proposed in Good Faith ........................................................................48
J. Closing the Chapter 11 Cases .......................................................................48
K. Waiver or Estoppel.......................................................................................48
L. Controlling Document...................................................................................48

## INTRODUCTION

The above-captioned Debtors hereby propose the following Plan, pursuant to Bankruptcy Code section 1121, for the resolution of outstanding Claims against, Interests in, and Expenses incurred by the Debtors. The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code section 1129.

As discussed in greater detail herein, during these Chapter 11 Cases, the Debtors sold substantially all of their Assets. The Sale of the Purchased Assets discussed herein did not generate sufficient proceeds to pay all expected Claims against the Estates. This Plan proposes to establish a Liquidating Trust for the purposes of liquidating remaining Assets and distributing available Cash to pay Administrative Expense Claims, Secured Claims (to the extent not already paid), Priority Tax Claims, Priority Non-Tax Claims, and finally, to make distributions to Holders of General Unsecured Claims.

ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN ARE ENCOURAGED TO READ THIS PLAN CAREFULLY AND IN ITS ENTIRETY, BUT PARTICULARLY INCLUDING THE RELEASES, EXCULPATIONS, AND INJUNCTIONS SET FORTH IN ARTICLE VIII, BEFORE VOTING ON THIS PLAN.

This document also encompasses the Disclosure Statement required pursuant to Bankruptcy Code section 1125. No materials other than this Plan (including the Disclosure Statement included herein) and any Exhibits and schedules attached hereto or referenced herein have been authorized by the Plan Proponent for use in soliciting acceptances or rejections of this Plan. All references in the remainder of this document to "this Plan" will be deemed to be references to "this Plan and the Disclosure Statement included within this Plan."

The Disclosure Statement included in this Plan has been conditionally approved by the Bankruptcy Court. The Bankruptcy Court will consider final approval of the Disclosure Statement at the Confirmation Hearing scheduled for **June 13, 2025 at 1:00 p.m. (prevailing Central Time)**. The Confirmation Hearing will be held before The Honorable Judge Alfredo Pérez of the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk, 4th Floor, Courtroom 400, Houston, Texas 77002. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.

Objections to the Disclosure Statement or to Confirmation of the Plan must be filed and served on or before **June 13, 2025 at 12:00 p.m. (prevailing Central Time)**. Unless an objection is timely filed and served, they may not be considered by the Bankruptcy Court at the Confirmation Hearing.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

### A.      Defined Terms

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Article.  Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

*Accepting Class* means a class of Claims or Interests that votes to accept this Plan in accordance with section 1126 of the Bankruptcy Code.

*Administrative Claim* or *Administrative Expense Claims* means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including: (i) the actual and necessary costs and expenses incurred after the Debtors' Petition Date of preserving the Estates and/or in connection with operating the Debtors' business (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against the Estates under 28 U.S.C. § 1930.

*Administrative Claim Bar Date* means, except as provided in Article III herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

*Affiliate* has the meaning prescribed in Bankruptcy Code section 101(2).

*Alliance* shall mean Alliance 2000, LTD.

*Allowed* means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502 that: (i) has been allowed by a Final Order, including but not limited to any Final Order estimating Claims for purposes of confirming this Plan; (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (iii) is expressly allowed in a liquidated amount in the Plan; *provided*, *however*, that with respect to an Administrative Claim, "Allowed" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to

2

which (a) a timely objection has not been filed, or (b) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

**APA** means that certain Asset Purchase Agreement, dated April 15, 2025, as amended pursuant to that certain Amendment to Asset Purchase Agreement, dated May 19, 2025, by and between Debtors ENGlobal Corporation, ENGlobal U.S., and ENGlobal Technologies, as Seller, and ENGlobal Automation, LLC and Gulf Island Fabrication, Inc., as Buyer.

**Asset** means all of the rights, title, and interests of a Debtor in and to property of whatever type or nature (including real, personal, mixed, intellectual, tangible, and intangible property).

**Avoidance Actions** means any and all actual or potential Claims and Causes of Action that may be commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by either of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

**Ballot** means the forms of ballots served by the Debtors to the Voting Classes to solicit acceptances or rejections of the Plan.

**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq*.

**Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**Bankruptcy Estate** or **Estate** means the estate of the Debtors created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases, and all Estate Property comprising each estate.

**Bankruptcy Rules** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases or proceedings therein, and the Bankruptcy Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

**Bar Date** means July 13, 2025, the date set forth in the *Notice of Chapter 11 Bankruptcy Case* [ECF # 51] by which Proofs of Claim must be filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding Holders of such Claims or Interests from the requirement of filing Proofs of Claim.

**Business Day** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**Buyer** means, collectively, ENGlobal Automation, LLC *f/k/a* Gulf Island Automation & Infrastructure, LLC and Gulf Island Fabrication, Inc., and their respective Affiliates and assigns.

**Cash** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

**Cause(s) of Action** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertible, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. This term also specifically includes: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or Interests; (iii) Avoidance Actions; and (iii) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**Chapter 11 Case(s)** means, with respect to a Debtor, such Debtor's case under Chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, which cases are being jointly administered under the case styled *In re: ENGlobal Corporation, et al.*, Case No. 25-90083.

**Chief Restructuring Officer** or **CRO** means John D. Baumgartner.

**Claim** means a claim against any portion of the Debtors' Estates, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

**Claims and Noticing Agent** means Kroll Restructuring Administration, LLC, the notice, Claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases in accordance with the Bankruptcy Court's *Order Authorizing the Employment and Retention of Kroll Restructuring Administration, LLC as Claims and Noticing Agent for the Debtors* [ECF # 11].

**Claims Register** means the official register of Claims maintained by the Claims and Noticing Agent.

**Class** means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

**CM/ECF** means the Bankruptcy Court's Case Management and Electronic Cases Filing system.

**Confirmation** means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

**Confirmation Date** means the date of entry by the Bankruptcy Court of the Confirmation Order.

**Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

**Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

***Consummation*** means the occurrence of the Effective Date.

***Current Directors and Officers*** means the directors and officers of the Debtors who were directors and officers of the Debtors as of the Petition Date.

***Debtor(s)*** means ENGlobal Corporation, ENGlobal U.S., ENGlobal Government Services and ENGlobal Technologies, each individually a Debtor.

***DIP Credit Agreement*** means that certain DIP Credit Agreement, dated March 5, 2025, by and between the Debtors, as Borrowers, and GIFI, as DIP Lender, which, among other things, provided for senior secured priming debtor-in-possession financing to the Debtors during the Chapter 11 Cases, together with all amendments, modifications, supplements thereto and any related DIP Loan Documents as defined therein.

***DIP Facility*** means the debtor-in-possession financing advanced by the DIP Lender to the Debtors during the Chapter 11 Cases pursuant to the DIP Credit Agreement in accordance with the Interim DIP Order, Final DIP Order, and Supplemental DIP Order entered by the Bankruptcy Court.

***DIP Lender*** means Gulf Island Fabrication, Inc., solely in its capacity as lender pursuant to the DIP Credit Agreement.

***DIP Loan Claim*** means a Claim held by the DIP Lender, arising under or relating to the DIP Credit Agreement, the Interim DIP Order, Final DIP Order, and Supplemental DIP Order, in the total aggregate principal amount of up to $3,500,000 (*i.e.*, the sum of the DIP Roll-Up Loan, DIP New Money Loans, and DIP Supplemental Loans), together with any and all fees and accrued but unpaid interest arising under the DIP Credit Agreement.

***DIP New Money Loans*** means those loans made by the DIP Lender to the Debtors during the Chapter 11 Cases in the aggregate amount of $2,100,000 pursuant to the DIP Credit Agreement in accordance with the Interim DIP Order and Final DIP Order entered by the Bankruptcy Court. For the avoidance of doubt, this term expressly excludes any DIP Supplemental Loans advanced by the DIP Lender pursuant to the Supplemental DIP Order.

***DIP Roll-Up Loan*** means the conversion of $400,000 of the Prepetition Bridge Loan to loans under the DIP Credit Agreement comprising all of the aggregate principal amount of the Prepetition Bridge Loan outstanding under the Prepetition Bridge Loan Agreement, together with the accrued and unpaid interest, default interest, prepayment premiums, and other fees thereon, which DIP Roll-Up Loan was deemed "rolled up" and consolidated with the DIP New Money Loans under the DIP Credit Agreement on a dollar-for-dollar basis pursuant to the terms, and subject to the conditions set forth, in the DIP Credit Agreement and the Final DIP Order.

***DIP Supplemental Loans*** means the supplemental loans made by the DIP Lender to the Debtors from and after the First Closing Date of the Sale in the Chapter 11 Cases in the aggregate principal amount not to exceed $1,000,000.

***Disclosure Statement*** means the disclosure statement portions of this Combined Chapter 11 Plan and Disclosure Statement filed by the Debtors, as such document may be amended, modified, or supplemented from time to time.

**Disputed Claim** means a Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law or an Administrative Claim as to which an objection has been filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, and such objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that: (i) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtors in their respective Schedules; (ii) any corresponding Claim scheduled by the Debtors in the Schedules has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (iii) no corresponding Claim has been scheduled by the Debtors in the Schedules; or (iv) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

**Distribution Record Date** means the Confirmation Date.

**Effective Date** means the date that is the first Business Day after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect, and (ii) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

**ENGlobal Corporation** means Debtor ENGlobal Corporation.

**ENGlobal Government Services** means Debtor ENGlobal Government Services, Inc.

**ENGlobal Technologies** means Debtor ENGlobal Technologies LLC.

**ENGlobal U.S.** means Debtor ENGlobal U.S., Inc.

**Entity** means any Person, estate, trust, Governmental Unit, or UST, as set forth in Bankruptcy Code section 101(15).

**Estate Property** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtors or their respective Estates on the Petition Date, as the case may be, as defined by Bankruptcy Code section 541.

**Exculpated Parties** means, collectively, and in each case solely in their capacities as such during the Chapter 11 Cases: (i) the Debtors; (ii) the Chief Restructuring Officer; and (iii) the independent members of the Board of Directors of ENGlobal Corporation.

**Executory Contract** means an executory contract, as such term is used in Bankruptcy Code section 365, to which any Debtor is a party or beneficiary.

**Exhibit** means an exhibit annexed to the Plan.

**Final Order** means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtors' Chapter 11 Cases, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

6

***Final DIP Order*** means the Bankruptcy Court's *Final Order (I) Authorizing the Debtors To (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* [ECF # 63].

***First Closing*** means the closing of the Sale of the First Closing Assets and First Closing Assumed Liabilities with Buyer on May 19, 2025 and effective as of May 12, 2025 in accordance with, and as such terms and conditions are more fully set forth and defined in, the Sale Order and APA.

***General Unsecured Claim*** means an Unsecured Claim that is not: (i) an Administrative Claim; (ii) a Professional Compensation Claim; (iii) a Priority Tax Claim; or (iv) a Priority Non-Tax Claim.

***Governmental Unit*** means any governmental unit, as defined in Bankruptcy Code section 101(27).

***GIFI*** means Gulf Island Fabrication, Inc. and its Affiliates, successors and assigns.

***Holder*** means: (i) as to any Claim, (a) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (b) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by a Final Order of the Bankruptcy Court, or (c) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (ii) as to any Interest, (a) the owner or holder of such Interest as such is reflected on any Proof of Interest filed with respect to such Interest, or (b) if no Proof of Interest has been filed with respect to such Interest, the record owner or holder of such Interest as shown in the corporate records maintained by the Debtors or as otherwise determined by a Final Order of the Bankruptcy Court.

***Impaired*** or ***Impairment*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

***Insider*** has the meaning set forth in Bankruptcy Code section 101(31).

***Intercompany Interest*** means an Interest in a Debtor held by another Debtor.

***Interest***, ***Equity Interest***, or ***Membership Interest*** means any ownership interest in the Debtors as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

***Interim DIP Order*** means the Bankruptcy Court's *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Priming Superpriority Postpetition Financing; (B) Use Cash Collateral; and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Modifying the Automatic Stay, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [ECF # 30].

*IRS* means the Internal Revenue Service.

*Judicial Code* means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

*Lien* means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

*Liquidating Debtors* means, collectively, ENGlobal Corporation, ENGlobal U.S. and ENGlobal Technologies, or any successors or assigns, by merger, consolidation, or otherwise, on and after the Effective Date.

*Liquidating Trust* means the ENG Liquidating Trust established pursuant to Article V of this Plan.

*Liquidating Trust Agreement* means an agreement setting forth the economic arrangement and terms pursuant to which the Liquidating Trustee will perform its duties under this Plan.

*Liquidating Trust Assets* means any and all Estate Property and Assets constituting Excluded Assets as defined in the APA, including (i) all Avoidance Actions, Causes of Action and other claims for relief constituting Retained Causes of Action, together with the proceeds thereof; and (ii) all other remaining Assets and the Debtors' Cash on hand as of the Effective Date; *provided, however,* that the term Liquidating Trust Assets expressly excludes any Cash segregated by the Debtors for payment to Professionals and other Persons, Entities or Governmental Units pursuant to applicable Final Orders of the Bankruptcy Court.

*Liquidating Trust Beneficiaries* means the Holders of Allowed Claims or Interests receiving a beneficial interest in the Liquidating Trust under this Plan.

*Liquidating Trustee* means the Person, or any successor thereto, selected by the Debtors and identified in the Liquidating Trust Agreement who shall be charged with overseeing the tasks outlined in this Plan and the Liquidating Trust Agreement.

*Other Secured Claim* means a Secured Claim other than a Priority Tax Claim or the Claim arising from the Prepetition Alliance Loan Debt.

*Person* means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

*Petition Date* means March 5, 2025, the date on which the Debtors commenced their Chapter 11 Cases.

*Plan* means this Joint Combined Chapter 11 Plan and Disclosure Statement filed by the Debtors, as such document may be amended, modified, or supplemented from time to time.

*Plan Documents* means, collectively, those documents in furtherance of Consummation of the Plan or to be executed in order to consummate the transactions contemplated under the Plan, which may be filed by the Debtors with the Bankruptcy Court.

8

***Plan Distribution*** means any initial, periodic, or final payment or transfer of consideration to Holders of Allowed Claims made under this Plan.

***Plan Supplement*** means a supplement or supplements to the Plan in form and substance acceptable to the Debtors, as such may be amended from time-to-time, containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, which may include: (a) a schedule of Retained Causes of Action, (b) the Liquidating Trust Agreement containing the identity of the Liquidating Trustee, and (c) the Liquidation Analysis.

***Prepetition Alliance Loan Agreement*** means that certain Amended and Restated Credit Agreement, dated April 24, 2024 (as amended by that certain First Amendment to Amended and Restated Credit Agreement, dated November 11, 2024, by and between ENGlobal Corporation, as borrower, Alliance, as lender, and ENGlobal Technologies, ENGlobal U.S. and ENGlobal Government Services, as guarantors, with such Prepetition Alliance Loan Agreement being subject to that certain Subordination Agreement, dated February 19, 2025, by and among Alliance, the Debtors, and GIFI, pursuant to which Alliance agreed to subordinate the indebtedness, Liens, and obligations owed under the Prepetition Alliance Loan Agreement to the Prepetition Bridge Loan Debt owed by the Debtors under the Prepetition Bridge Loan Agreement.

***Prepetition Alliance Loan Debt*** means the secured prepetition debt obligations owed to Alliance pursuant to the Prepetition Alliance Loan Agreement in the aggregate outstanding amount of approximately $2,434,754 as of the Petition Date.

***Prepetition Bridge Loan Agreement*** means that certain Loan and Security Agreement, dated February 19, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified) by and among the Debtors, as borrower, and GIFI, as prepetition bridge lender.

***Prepetition Bridge Loan Debt*** means the secured prepetition debt obligations owed to GIFI pursuant to the Prepetition Bridge Loan Agreement in the original principal amount of $400,000.00, which amount was deemed "rolled up" during the Chapter 11 Cases as the DIP Roll-Up Loan in accordance with the DIP Credit Agreement and Final DIP Order.

***Prepetition Secured Loans*** means, collectively, those certain funds advanced to the Debtors pursuant to the Prepetition Bridge Loan Agreement and Prepetition Alliance Loan Agreement.

***Priority Non-Tax Claim*** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

***Priority Tax Claim*** means a Claim asserted under Bankruptcy Code section 507(a)(8).

***Pro Rata*** means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

***Professional*** means an Entity: (i) employed pursuant to a Final Order of the Bankruptcy Court in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

9

***Professional Compensation Claim*** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

***Professional Compensation Claim Bar Date*** means, except as provided in Article III herein, sixty (60) days after the Effective Date.

***Professional Compensation Claim Objection Deadline*** means twenty-one (21) days after the earlier of (i) the filing of the Professional Compensation Claim; or (ii) the Professional Compensation Claim Bar Date.

***Proponent*** means the Debtors.

***Proof of Claim*** means a proof of Claim filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

***Proof of Interest*** means a proof of Interest filed against the Debtors in the Chapter 11 Cases by the applicable Bar Date.

***Purchased Assets*** means all of the Debtors' Assets included in the Sale to Buyer pursuant to the Sale Order and APA.  For the avoidance of doubt, this term expressly excludes those certain Assets and Estate Property of the Debtors designated as Excluded Assets in the APA.

***Reorganized Debtor*** means, on the Effective Date, Debtor ENGlobal Government Services.

***Retained Causes of Action*** means those Causes of Action set forth in the attached **Exhibit A**, which Causes of Action are being retained pursuant to Article VIII herein.

***Sale*** means the sale of substantially all of the Debtors' Assets and Estate Property to Buyer pursuant to the Sale Order and APA.

***Sale Order*** means the Bankruptcy Court's *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of the Debtors' Assets Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [ECF # 118], approving the Sale of substantially all of the Debtors' Assets to the Buyer as more fully set forth in the APA.

***Schedules*** means, collectively, the Schedules of Assets and Liabilities, Schedules of Equity Security Holders, and the Statements of Financial Affairs filed by the Debtors in the Chapter 11 Cases, as may be amended, modified, or supplemented.

***Second Closing*** means closing of the Sale of the Second Closing Assets and Second Closing Assumed Liabilities with Buyer in accordance with, and as such terms and conditions are more fully set forth and defined in, the Sale Order and APA.

**Secured Claim** means a Claim: (i) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**Secured Tax Claim** means a Secured Claim for taxes held by a Governmental Unit, including cities, counties, school districts, and hospital districts: (i) entitled by statute to assess taxes based on the value or use of real and personal property and to obtain an encumbrance against such property to secure payment of such taxes; or (ii) entitled to obtain an encumbrance on property to secure payment of any tax Claim specified in Bankruptcy Code section 507(a)(8). Secured Tax Claims shall not include any such Claims secured by Liens or security interests that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

**Statutory Fees** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 or title 28 of the United States Code.

**Subordinated Claim** means a Claim that is subordinated to General Unsecured Claims according to: (i) a contract or agreement; (ii) a Final Order declaring that such Claim is subordinated in right or payment; or (iii) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law. Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

**Supplemental DIP Order** means the Bankruptcy Court's *Order* [ECF # 131] approving the amendment to the DIP Credit Agreement and authorizing the Debtors to obtain the DIP Supplemental Loan from the DIP Lender.

**Tax Code** means the Internal Revenue Code of 1986, as amended from time to time.

**Unexpired Lease** means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

**Unimpaired** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

**Unsecured Claim** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9). The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim asserted against the Debtors to the extent that such Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

**UST** means the Office of the United States Trustee.

**Voting Class(es)** means Classes 3, 4 and 5 under the Plan.

**Voting Deadline** means June 11, 2025 at 5:00 p.m. (prevailing Central Time) as the date and time established by the Bankruptcy Court for voting to accept or reject this Plan.

**B.**     <u>Rules of Interpretation and Construction of Terms</u>

For purposes of this Plan: (i) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in this Plan to an existing document or Exhibit filed or to be filed means that document or Exhibit as it may have been or may be amended, supplemented, or otherwise modified; (iii) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (iv) the words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (v) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (vi) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (vii) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (viii) unless specifically noted otherwise, any reference to docket numbers of documents filed in the Chapter 11 Cases are references to docket numbers under the Bankruptcy Court's CM/ECF system for Case No. 25-90083; and (ix) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

**C.**     <u>Computation of Time</u>

All times referenced in this Plan are prevailing Central Time. In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006 shall apply. If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.**     <u>Governing Law</u>

Except as otherwise provided herein, and subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

**E.**     <u>Reference to Monetary Figures</u>

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**F.**     <u>Incorporation of Documents by Reference</u>

This Plan incorporates by reference certain documents relating to the Debtors that are not presented herein or delivered herewith. The documents that have been filed in the Chapter 11 Cases are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for Confirmation, including the Debtors' Schedules. Documents and pleadings

filed in the Chapter 11 Cases are available by visiting: (i) the Debtors' restructuring website at: https://cases.ra.kroll.com/ENGlobal/; or (ii) the website maintained by the Bankruptcy Court at http://www.txs.uscourts.gov/bankruptcy.

## ARTICLE II.
## DISCLOSURES REGARDING THE DEBTORS AND CHAPTER 11 CASES

The information in this Article is provided in accordance with the requirements of Bankruptcy Code section 1125. This information includes, among other things, (i) general information about the business, property, and operations of the Debtors, (ii) the events leading to the filing of the Chapter 11 Cases, and (iii) certain significant events which have occurred to date in the Chapter 11 Cases. To the extent this Article describes events or pleadings that have been filed in this Chapter 11 Cases or ancillary litigation, such matters and events are qualified in their entirety by the actual pleadings filed in the Chapter 11 Cases and ancillary litigation. To the extent of any inconsistencies between the descriptions in this Article and such pleadings, such pleadings shall control. All of such pleadings are on file with the Bankruptcy Court or the courts where such ancillary matters are pending and may be obtained from the respective courts for review.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE DEBTORS' PLAN (AS AMENDED FROM TIME TO TIME), AND NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR SECURITIES LAWS OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS. ANY PERSON OR ENTITY BUYING OR SELLING A CLAIM BASED ON THE INFORMATION CONTAINED HEREIN, DOES SO AT ITS OWN RISK.

THIS PLAN AND DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. IN ADDITION, THIS PLAN AND DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

THE DEBTORS HAVE ATTEMPTED TO PRESENT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT ACCURATELY AND FAIRLY. THE ASSUMPTIONS UNDERLYING THE ANTICIPATION OF FUTURE EVENTS CONTAINED IN THIS DISCLOSURE STATEMENT REPRESENT AN ESTIMATE BY THE DEBTORS, BUT BECAUSE THESE ARE ONLY ASSUMPTIONS OR PREDICTIONS OF FUTURE

EVENTS (MOST OF WHICH ARE BEYOND THE DEBTORS' CONTROL), THERE CAN BE NO ASSURANCE THAT THE EVENTS WILL OCCUR.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS DISCLOSURE STATEMENT AND IN THE PLAN CONCERNING THE HISTORY OF THE DEBTORS' BUSINESSES, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, CERTAIN PROJECTIONS FOR THE FUTURE LIQUIDATION OF THE DEBTORS, TRANSACTIONS TO WHICH ANY DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY. NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE DEBTORS MAKE ANY REPRESENTATIONS CONCERNING SUCH INFORMATION.

NO PERSON IS AUTHORIZED BY THE DEBTORS IN CONNECTION WITH THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN AND, IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTORS. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ENCOURAGED TO REVIEW THE DOCKET IN THE CHAPTER 11 CASES IN ORDER TO APPRISE THEMSELVES OF EVENTS WHICH OCCUR IN THE CHAPTER 11 CASES BETWEEN THE DATE OF THIS DISCLOSURE STATEMENT AND THE CONFIRMATION DATE.

## A.     Purpose of This Disclosure Statement

The purpose of this Disclosure Statement is to provide the Holders of Claims entitled to vote on the Plan with adequate information to make an informed judgment about the Plan. This information includes, among other things; (a) a summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan; (b) general information about the businesses, property, and operations of the Debtors; (c) the events leading to the filing of the Chapter 11 Cases; and, (d) a summary of significant events which have occurred to date in the Chapter 11 Cases.

**B.**     **Important Dates**

| Event or Deadline | Date and Time |
|---|---|
| Disclosure Statement Approval Hearing | May 30, 2025 at 1:00 p.m. (prevailing Central Time) |
| Voting Deadline | June 11, 2025 at 5:00 p.m. (prevailing Central Time) |
| Confirmation Objection Deadline | June 13, 2025 at 12:00 p.m. (prevailing Central Time) |
| Confirmation Hearing | June 13, 2025 at 1:00 p.m. (prevailing Central Time) |

**C.**     **Who May Vote**

Only the Holders of Claims which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan. For purposes of the Plan, only the Holders of Claims in the Voting Classes may vote to accept or reject the Plan. **Accordingly, a Ballot for acceptance or rejection of the Plan is only being provided to members of the Voting Classes.**

**D.**     **How to Vote**

Each Holder of a Claim in a Voting Class should read this Plan and its Exhibits in their entirety. After carefully reviewing, please complete any enclosed Ballots you received by marking your vote with respect to the Plan and then returning all Ballots pursuant to the instructions provided. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot, you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all such Ballots. If you believe you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact the Debtors' counsel.

**In order to be counted, Ballots must be duly completed, executed and received no later than the Voting Deadline of June 11, 2025 at 5:00 p.m. (prevailing Central Time).** All Ballots should be returned either by regular mail, hand delivery, overnight delivery, or electronic submission to:

Kroll Restructuring Administration, LLC
Re: ENGlobal Corporation, *et al.*
Grand Central Station, PO Box 4850
New York, NY 10163-4850
Toll Free Tel: 1 (888) 533-3280
Online: https://cases.ra.kroll.com/ENGlobal

**E.**     **Acceptance of Plan and Votes Required for Class Acceptance**

As the Holder of a Claim in a Voting Class, your vote on the Plan is extremely important. You may be contacted by the Debtors or their representatives with regard to your vote on the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if:

15

(i)        the Holders (other than any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and

(ii)       the Holders (other than any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan; *provided*, *however*, that to the extent a Holder of a Claim in a Voting Class holds Claims against more than one of the Debtors, the Claims shall be tabulated for voting and Confirmation purposes as votes in separate subclasses – *i.e.*, Class 3(a) and 3(b), or 4(a) and 4(b).

To meet the requirement for Confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims which votes to reject, or is deemed to have rejected, the Plan, the Debtors would have to show that all Classes junior to the rejecting Class will not receive or retain any property under the Plan unless all Holders of Claims in the rejecting Class receive or retain under the Plan property having a value equal to the full amount of their Allowed Claims. A more complete description of the implementation of the "cram-down" provisions of the Bankruptcy Code pursuant to the Plan is set forth below.

## F.    **The Debtors' Business**

1.   *Corporate History*.

The Debtors, comprised of ENGlobal Corporation (the publicly traded parent company), and it's three (3) wholly-owned subsidiaries, ENGlobal U.S., ENGlobal Government Services, and ENGlobal Technologies, are a provider of innovative, delivered project solutions primarily to the energy industry, delivering these solutions to clients by combining vertically-integrated engineering and professional project execution services with automation and systems integration expertise. The Debtors' vertically-integrated strategy allowed them to differentiate their company from most of their competitors as a full-service provider, thereby reducing clients' dependency on and coordination of multiple vendors and improving control over project cost and schedules. This strategy and positioning allowed the Debtors to pursue larger scopes of work centered around many different types of modularized engineered systems. The Debtors established a long history of delivering project solutions and providing complete project execution through communicating these offerings to clients, which include: (i) Engineering, (ii) Automation, and (iii) Government Services.

The Debtors' engineering group focused on providing engineering, procurement and construction management services as well as fabricated products to downstream refineries, petrochemical, and renewable energy facilities as well as midstream pipeline, storage and other transportation related companies. These services were often applied to small capital improvement and maintenance projects within refineries and petrochemical facilities. For transportation clients,

the Debtors worked on facilities that included pumping, compression, gas processing, metering, storage terminals, product loading and blending systems.

The Debtors' automation group designed, integrated and commissioned modular systems that included electronic distributed control, on-line process analytical data, continuous emission monitoring, and electric power distribution. Often these packaged systems were housed in a fabricated metal enclosure, modular building or freestanding metal rack, which were commonly included in the scope of work. The Debtors provided automation engineering, procurement, fabrication, systems integration, programing and on-site commissioning services to their clients for both new and existing facilities.

The Debtors' government services group, operating through ENGlobal Government Services, provided various services related to the design, integration and implementation of process distributed control, advanced automated data gathering systems, automated fuel handling systems, information technology and the maintenance of these systems to Governmental Units, including the U.S. Government. Other clients of this group included state and local government agencies and small commercial accounts. ENGlobal Government Services also provided electrical and instrument installation, technical services, and ongoing maintenance, calibration and repair services.

    2. *Prepetition Debt*.

The Debtors incurred a marginal amount of secured debt in the form of Prepetition Secured Loans to fund their activities and sustain operations. A detailed description of the Debtors' various credit and security agreements is set forth below.

Prior to the Petition Date, ENGlobal Corporation, as borrower, executed that Prepetition Alliance Loan Agreement with Alliance and incurring the Prepetition Alliance Loan Debt. The Prepetition Share Holder Loan Debt was secured by Liens on all Assets of ENGlobal Corporation. Debtors ENGlobal U.S., ENGlobal Government Services and ENGlobal Technologies are guarantors of the Prepetition Alliance Loan Debt. As of the Petition Date, the outstanding amount of the Prepetition Alliance Loan Debt was approximately $2,434,754. Upon information and belief, Alliance transferred its Secured Claims on account of the Prepetition Alliance Loan Debt to GIFI during the Chapter 11 Cases.

In response to the Debtors' mounting liquidity issues and their inability to meet an upcoming payroll, the Debtors entered into that certain Prepetition Bridge Loan Agreement with GIFI for a multi-draw term loan facility in an aggregate principal amount not to exceed $400,000.00. This Prepetition Bridge Loan Debt was secured by senior secured priming Liens on all Assets of the Debtors. In connection therewith Alliance agreed to subordinate its Liens under the Prepetition Alliance Loan Agreement to the Liens granted to GIFI pursuant to the Prepetition Bridge Loan Agreement. Thus, as of the Petition Date, the aggregate amount of the Prepetition Secured Loans incurred by the Debtors was approximately $2,850,000, with GIFI holding first Liens and Alliance holding second Liens on the Debtors' Assets.

In addition to the Claims arising from the Prepetition Secured Loans, the Debtors have substantial unsecured debt owed to numerous trade creditors, vendors, equipment lessors, facility

lessors, and others.  In the ordinary course of business, the Debtors have engaged in numerous strategic relationships with various service providers in relation to their operations which were critical to maintaining the value of the Debtors' Estates. Due to the various liquidity issues described herein, as of the Petition Date, the Debtors did not have sufficient cash flow to pay their outstanding trade payables. The Debtors estimate that they incurred approximately $10,000,000 in Unsecured Claims prior to the Petition Date.  A more detailed description and listing of the Debtors' estimated liabilities as of the Petition Date, including Secured Claims and Unsecured Claims, is set forth in the Debtors' Schedules filed in the Chapter 11 Cases.  *See* ECF #s 106, 107, 108 and 109.

3.  *Equity Interests*.

As set forth above, Debtors ENGlobal U.S., ENGlobal Government Services and ENGlobal Technologies are wholly-owned subsidiaries of ENGlobal Corporation.  Accordingly, all of their Equity Interests and Membership Interests, as applicable, are owned and held by ENGlobal Corporation.  The common stock Equity Interests of ENGlobal Corporation are publicly traded and the Holders of such Equity Interests as of the Petition Date are set forth in the List of Equity Security Holders attached the Debtor's voluntary petition filed on the Petition Date in the Chapter 11 Cases. *See* ECF # 1.

## G.    **Events Leading to the Chapter 11 Cases**

While the Debtors' business maintains significant fixed monthly operating costs (including material costs in the form of employee wages/retention and the litany of regulatory and reporting requirements to maintain its public form), the nature of the Debtors' business, including the lengthy project timelines, the timing of receivables tied to contractual milestones, and general economic conditions in the U.S. market, began causing untenable liquidity issues in the months leading up to the filing of the Chapter 11 Cases.  Recognizing this ominous financial forecast, the Debtors' management reviewed their strategic alternatives and began attempting to engage with industry competitors and other potentially interested parties in an effort to locate a partner for either a merger or acquisition of the Debtors' business. However, these negotiations did not bear fruit, and in light of the significant trade debt and other operational hurdles, the Debtors' options for right-sizing their balance sheet dwindled.  As their liquidity issues grew worse, the Debtors were ultimately able to reach an agreement with one interested party, GIFI, to provide the funding pursuant to the Prepetition Bridge Loan Agreement that was necessary to meet immediate obligations, such as payroll, while the Debtors prepared to commence their Chapter 11 Cases.

In sum, the Debtors' inability to service their mounting debt obligations and other trade payable obligations due to the prolonged downturn in the economy resulted in a severe Cash-flow shortage.  Accordingly, the Debtors were forced to file their Chapter 11 Cases under exigent circumstances as more fully set forth below.  Through these Chapter 11 Cases, the Debtors sought protection of the Bankruptcy Code's automatic stay while they endeavored to reorganize their business affairs and conduct a Sale of substantially all of their Assets under section 363 of the Bankruptcy Code.

**H.**     <u>Significant Events in the Chapter 11 Cases</u>

    1.     *The Petitions*.

On the Petition Date of March 5, 2025, all four (4) of the Chapter 11 Cases were commenced when each of the Debtors filed voluntary petitions for relief with the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

    2.     *Debtor in Possession Financing*.

The Debtors' negotiations with GIFI prior to the Petition Date regarding the Prepetition Bridge Loan Debt contemplated the filing of the Chapter 11 Cases and an additional agreement by which GIFI would as the DIP Lender. Immediately prior to filing the Chapter 11 Cases, the Debtors, through their Chief Restructuring Officer, negotiated and finalized the DIP Credit Agreement with GIFI, pursuant to which the DIP Lender agreed to provide up to $2,500,000 of financing to the Debtors upon commencing the Chapter 11 Cases in order to sustain their operations pending the Sale process. This DIP Facility consisted of the $400,000 Prepetition Bridge Loan Debt being rolled up as the DIP Roll-Up Loan on a dollar-for-dollar basis, plus an additional $2,100,000 in DIP New Money Loans.

On March 5, 2025, the Debtors filed their *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing and (B) Utilize Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF # 16].

After an emergency hearing on March 6, 2025, the Bankruptcy Court entered the Interim DIP Order. Among other things, the Interim DIP Order approved the Debtors' entry into the DIP Credit Agreement, and authorized the Debtors to obtain the DIP Facility and DIP New Money Loans to be used to fund the immediate working capital and liquidity needs of the Debtors pending a final hearing. On March 24, 2025, the Bankruptcy Court entered its Final DIP Order which, among other things, approved the DIP Facility and the roll up of the DIP Roll-Up Loan on a final basis, and authorized the Debtors to obtain the full amount of the DIP New Money Loans to fund the Chapter 11 Cases and sustain their operations as debtors in possession.

After conducting the Sale process and selecting GIFI and its Affiliate as Buyer for the Debtors' Assets as more fully set forth below, the Debtors reached an agreement with GIFI, as DIP Lender, to enter into an amendment to the DIP Credit Agreement and providing for the DIP Supplemental Loans in an amount not to exceed $1,000,000. In light of the Debtors' and Buyer's agreement in the APA to bifurcate the Sale closing, the DIP Supplemental Loans were necessary to enable to the Debtors to sustain their operations from and after the First Closing and ultimately reach the Second Closing contemplated by the APA and this Plan. On May 28, 2025, the Bankruptcy Court entered the Supplemental DIP Order.

3.      _Section 341 Meeting of Creditors_.

The meeting of creditors pursuant to section 341 of the Bankruptcy Code commenced on April 14, 2025 and, after a continuance, was completed on April 28, 2025.

4.      _Bar Dates_.

The Bar Date for filing Proofs of Claim or Proofs of Interests in the Chapter 11 Cases is July 13, 2025. The Bar Date for Governmental Units to file Proofs of Claim in the Chapter 11 Cases is September 1, 2025. The Bankruptcy Court has not yet established a bar date for the filing of Administrative Expense Claims in the Chapter 11 Cases, but it is expected that the Administrative Claim Bar Date set forth in the Plan will be approved and established pursuant to the Confirmation Order.

5.      _Schedules and Statements of Financial Affairs_.

The Debtors filed their various Schedules with the Bankruptcy Court on April 23, 2025. _See_ ECF #s 106, 107, 108 and 109.

6.      _Retention of Professionals_.

The Debtors retained the law firm of Okin Adams Bartlett Curry LLP as their general bankruptcy counsel in the Chapter 11 Cases. On April 21, 2025, the Bankruptcy Court entered an _Order Authorizing the Employment and Retention of Okin Adams Bartlett Curry LLP as Bankruptcy Counsel to the Debtors_ [ECF # 98].

In connection with the appointment of John D. Baumgartner as Chief Restructuring Officer, the Debtors retained Getzler Henrich & Associates LLC to provide financial advisory services in the Chapter 11 Cases. On April 28, 2025, the Bankruptcy Court entered an _Order Authorizing the Employment and Retention of (I) John D. Baumgartner as Chief Restructuring Officer; and (II) Getzler Henrich & Associates LLC as Financial Advisor for the Debtors_ [ECF # 120].

The Debtors retained Kroll Restructuring Administration, LLC as their Claims and Noticing Agent in the Chapter 11 Cases. On March 5, 2025, the Bankruptcy Court entered an _Order Authorizing the Employment and Retention of Kroll Restructuring Administration LLC as Claims and Noticing Agent for the Debtors_ [ECF # 11].

Pursuant to the DIP Credit Agreement, as amended, the Debtors and the DIP Lender agreed that the Carve Out Amount for accrued Professional Fees (as such terms are defined in the DIP Credit Agreement) with priority over outstanding DIP Loan Claims held by the DIP Lender if the Second Closing does not occur would be expressly capped at $1,300,000 in the aggregate for the entirety of the Chapter 11 Cases. Professional Compensation Claims in excess of the Professional Fee Carve Out Cap established by the DIP Credit Agreement will be treated as Administrative Claims under the Plan. The Debtors estimate that total Professional Fees for their retained Professionals will be approximately $1,300,000 and that, to the extent not previously paid during the Chapter 11 Cases pursuant to applicable Final Order of the Bankruptcy Court, outstanding unpaid fees and expenses among the Professionals, collectively, will be approximately $750,000.

7.      _Sale of Substantially All of the Debtors' Assets_.

In accordance with their obligations and milestones set forth in the Interim DIP Order and Final DIP Order, the Debtors began the process of marketing and selling substantially all of their Assets during the Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code.

On March 19, 2025, the Debtors filed their _Emergency Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Stalking Horse Protections; (IV) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date; (V) Approving Form of Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Assets; and (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief_ [ECF # 54].

After a hearing held on March 24, 2025, the Bankruptcy Court entered an _Order (I) Approving Bidding Procedures in Connection With the Sale of Substantially All Assets, (II) Approving Procedures Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Scheduling Bid Deadline, Auction Date, and Sale Hearing Date, and (IV) Approving the Form and Manner of Notice Thereof_ [ECF # 62], which among other things, established the bidding procedures that governed the manner in which the Assets of the Debtors were to be marketed and sold during the Chapter 11 Cases.

On April 15, 2025, the Debtors selected Gulf Island Automation & Infrastructure, LLC, a newly formed Affiliate of GIFI, to act as the Stalking Horse Purchaser for certain Purchased Assets pursuant to a credit bid of the then-outstanding DIP Loan Claims pursuant to section 363(k) of the Bankruptcy Code in the amount of $2,500,000.00.  _See_ Notice of Selection of Stalking Horse Purchaser [ECF # 89].

Thereafter, the Debtors continued their efforts to market the Assets to other interested bidders.  However, no other qualified bids were received.  As a result, the Debtors, exercising their business judgment, selected Gulf Island Automation & Infrastructure, LLC as the successful bidder and did not proceed with an auction. On April 25, 2025, the Bankruptcy Court entered the Sale Order approving the Sale of the Purchased Assets to Buyer as more fully set forth in the APA.

As originally approved by the Bankruptcy Court, the APA contemplated the Sale of the Debtors' Assets related to their Automation Business and Engineering Business, as well as sale of the Equity Interests in ENGlobal Government Services which are wholly owned by ENGlobal Corporation.  A condition precedent to the closing of the Sale in the APA was the Confirmation of a plan of reorganization for Debtor ENGlobal Government Services.

On May 19, 2025, ENGlobal Corporation, ENGlobal U.S. and ENGlobal Technologies, as Sellers, and ENGlobal Automation, LLC _f/k/a_ Gulf Island Automation & Infrastructure, LLC and GIFI, as Buyer, entered into that certain Amendment to the APA for the primary purpose of bifurcating the closing of the Sale initially contemplated by the APA.  Accordingly, the APA, as amended, provides for (i) the First Closing with respect to certain First Closing Assets and First Closing Assumed Liabilities primarily consisting of the Automation Business, and (ii) a subsequent Second Closing with respect to certain Second Closing Assets, including Engineering

Business and the Equity Interests of ENGlobal Government Services, and Second Closing Assumed Liabilities.

The First Closing occurred on May 19, 2025, and was effective as of May 12, 2025. In connection with the First Closing, the Buyer acquired those certain First Closing Assets pursuant to a credit bid under section 363(k) of the Bankruptcy Code in the amount of $1,750,000, which was equal to seventy percent (70%) of the $2,500,000 DIP Loan Claims then outstanding (i.e., the DIP Roll-Up Loan and DIP New Money Loans, but excluding any DIP Supplemental Loan amounts).

The Debtors and Buyer anticipate the Second Closing will occur after entry of the Confirmation Order by the Bankruptcy Court and simultaneously with the occurrence of the Effective Date of this Plan.  If the Second Closing occurs, Buyer will acquire the Second Closing Assets pursuant to a credit bid under section 363(k) of the Bankruptcy Code of the balance of all remaining DIP Loan Claims, which includes any DIP Supplemental Loans advanced between the First Closing and Second Closing. As a result, all outstanding DIP Loan Claims will be satisfied in full upon the Effective Date of the Plan and the Second Closing.

## I.    Best Interests of the Estate

As set forth herein, the Equity Interests of ENGlobal Government Services, as the Reorganized Debtor, together with all other Second Closing Assets set forth in the APA, will be sole and transferred to Buyer upon the Effective Date of this Plan and occurrence of the Second Closing simultaneously therewith.  The Debtors propose to transfer all remaining Estate Property, including Cash, Retained Causes of Action, and any other Excluded Assets in the APA to the Liquidating Trust to be monetized and further distributed pursuant to a waterfall consistent with the priorities established under the Bankruptcy Code and this Plan.  The Debtors' outstanding tax liabilities are currently unknown and there are a significant number of Claims, including the Prepetition Alliance Loan Debt, to which the Debtors may contest either as to their validity or amount. The Liquidating Trustee's resolution of these issues may have a significant impact upon Plan Distributions to Holders of Allowed Claims.  The illustrative waterfall set forth in the Debtors' liquidation analysis attached hereto as **Exhibit C** shows the Debtors' best estimate for range of Claims and recoveries in these Chapter 11 Cases. The Debtors estimate that Plan Distributions from the collection and liquidation of all Liquidating Trust Assets could be in the range of zero to three percent (0 - 3%) of total General Unsecured Claims against the Debtors' and their Estates. The Debtors believe this Plan contemplates the best method of generating the greatest recoveries to all Holders of Allowed Claims and is therefore in the best interests of the Estates.

## J.    Confirmation Requirements

1.    *Confirmation and Acceptance By All Impaired Classes*.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if all of the requirements of Bankruptcy Code section 1129 are met.  Among the requirements for Confirmation are that the Plan be accepted by all Impaired Classes of Claims and Equity Interests, and satisfaction of the matters described below.

*Feasibility*.  Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization). This Plan specifically provides for the liquidation of the Liquidating Debtors, and the Sale of the Equity Interests of the Reorganized Debtor to the Buyer immediately upon the Effective Date. Accordingly, this requirement of Confirmation is not applicable.

*Best Interests Standard*.  The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtors were liquidated under Chapter 7 on the same date.  The Debtors believe that distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would exceed the net distribution that would otherwise take place in Chapter 7.  Therefore, the Debtors submit that the interests of creditors are best served by voting to accept the Plan.

2.      *Confirmation Without Acceptance By All Impaired Classes*.

If one or more of the Impaired Classes of Claims or Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram down" provisions of the Bankruptcy Code if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

*Discriminate Unfairly*.  The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank.  The Debtors believe that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

*Fair and Equitable Standard*.  With respect to the Impaired Classes of Unsecured Claims, Bankruptcy Code section 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that: (i) each holder of a claim of such class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain property under the plan on account of such junior claim or interest.  The Debtors believe that the Plan meets these standards.

The Debtors believe that the requirements of Bankruptcy Code 1129(a) and (b) are met under the Plan.  Accordingly, if necessary, the Debtors will seek Confirmation of the Plan under the "cram down" provisions of the Bankruptcy Code and believe it meets the requirements for Confirmation by the Bankruptcy Court notwithstanding a potential non-acceptance by an Impaired Class of Claims.

**K.      Alternative Plans of Reorganization**

If the Plan is not confirmed, the Debtors or, subject to further determination by the Bankruptcy Court as to extensions of exclusivity under the Bankruptcy Code, any other party in

interest in the Chapter 11 Cases could attempt to formulate and propose a different plan or plans. Such plans might involve a reorganization, an orderly liquidation of the Debtors' remaining Assets, or a combination thereof.  The Debtors believe that their Plan will enable creditors to be paid the maximum amount possible for their Allowed Claims.

**L.**    **Liquidation Under Chapter 7 of the Bankruptcy Code**

If the Plan (or any other plan) is not confirmed, the Chapter 11 Cases may be converted to liquidation cases under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, a trustee would be elected or appointed to liquidate the remaining Estate Property of the Debtors.  The proceeds of the liquidation would be distributed to Holders of Claims and Interests of the Debtors in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtors believe that liquidation under Chapter 7 of the Bankruptcy Code would result in a substantial diminution of the value of the interests of the creditors because of: (i) the Debtors' inability and failure to consummate the Second Closing with Buyer that is contingent upon Confirmation of this Plan resulting in an outstanding DIP Loan Claim of approximately $1,750,000 with priority substantially all other Claims asserted in the Chapter 11 Cases; (ii) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (iii) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (iv) failure to realize the full value of the Debtors' reaming Assets in a liquidation; (v) the inability to utilize the work product and knowledge of the Debtors and their Professionals; and (vi) the substantial delay which would elapse before creditors would receive any distribution on account of their Claims.  Accordingly, the Debtors believe that the Plan is far superior to liquidation of the Debtors' Assets under Chapter 7 of the Bankruptcy Code.

**M.**    **Summary and Conclusion of Disclosure Statement**

The Plan establishes the framework for consummating the Second Closing pursuant to the APA and then conducting an orderly and prompt liquidation of the Debtors' remaining Estate Property.  Thus, the Plan provides the best potential for making any meaningful distributions to Holders of Allowed Claims against the Debtors.  The Debtors believe that their efforts to maximize the return for Holders of Claims and Interests have been full and complete.  The Debtors further believe that the Plan meets the requirements of the Bankruptcy Code and is in the best interests of all creditors.

**ARTICLE III.**
**ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims, DIP Loan Claims, and Priority Tax Claims have not been classified for purposes of voting on, or receiving distributions under, the Plan, and, thus, are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

A.      **Administrative Claims**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims, the DIP Loan Claim, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (ii) if such Administrative claim is not Allowed as of the Effective Date, no later than ten (10) Business Days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.  For the avoidance of doubt, to the extent a Holder of an Administrative Claim is not being paid by the Debtors in the ordinary course, such Holder must file a request for payment of such Administrative Claim by the Administrative Claim Bar Date as set forth below.

Except for Professional Compensation Claims, and unless previously filed, requests for payment of Administrative Claims must be filed no later than the Administrative Claim Bar Date. Objections to such requests must be filed and served on the Liquidating Trustee and the requesting party on or before twenty-one (21) days after: (i) the filing of the request for payment of the Administrative Claim; or (ii) the Administrative Claim Bar Date, whichever occurs first. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for payment of Administrative Claims that do not file and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property or against the Liquidating Trustee or the Liquidating Trust Assets, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Liquidating Trustee or any action by the Bankruptcy Court.

B.      **DIP Loan Claim**

As more fully set forth above in the Plan, and subject to the Consummation of the Plan, the Effective Date and the Second Closing, all of the Debtors' outstanding obligations pursuant to the DIP Credit Agreement, Final DIP Order and Supplemental DIP Order will have be credited by the DIP Lender, as Buyer, in connection with the Sale pursuant to the Sale Order and APA. As a result, all Liens of the DIP Lender will be released and discharged in their entirety or otherwise deemed paid in full on the Effective Date.

C.      **Professional Compensation Claims**

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Professional Compensation Claim Bar Date.  Objections to Professional Compensation Claims

must be filed and served on the Liquidating Trustee and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court, including those certain compensation procedures set forth and defined in the Bankruptcy Court's *Order Establishing Procedures for the Interim Compensation and Reimbursement of Expenses of Professionals* [ECF # 96]. Allowed Professional Compensation Claims shall be paid by the Liquidating Trustee in Cash within ten (10) Business Days of the entry of a Final Order allowing such Claims.

**D.    Priority Tax Claims**

Except (a) to the extent that the Holders of Allowed Priority Tax Claims have already been paid, satisfied or otherwise released prior to the Effective Date, and (b) to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, then in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Priority Tax Claim, each Holder of Allowed Priority Tax Claim shall receive on the later of: (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; *provided*, *however*, that the Liquidating Trustee or Liquidating Debtors, as applicable, shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

**ARTICLE IV.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.    Classification in General**

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

**B.    Summary of Classification of Claims and Interests**

The classification of Claims against, and Interests in, the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Allowed Priority Non-Tax | Unimpaired | No |

26

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 2 | Allowed Other Secured Claims | Unimpaired | No |
| Class 3 | Allowed Prepetition Alliance Loan Debt | Impaired | Yes |
| Class 4 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 5 | Allowed Subordinated Claims | Impaired | Yes |
| Class 6 | Allowed Equity Interests | Impaired | Presumed to Reject |

C.      **Treatment of Claims and Interests**

1.      *Class 1* – Class 1 shall consist of Holders of Allowed Priority Non-Tax Claims, if any. On the Effective Date, Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall be entitled to receive, on or after the Effective Date, in full and final satisfaction of, and in exchange for each Priority Non-Tax Claim: (i) payment in full in Cash of its Allowed Class 1 Claim; or (ii) such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9).

Class 1 is Unimpaired under the Plan. Holders of Allowed Claims in Class 1 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

2.      *Class 2* – Class 2 shall consist of Holders of Allowed Other Secured Claims. On the Effective Date, and except to the extent that a Holder of an Allowed Class 2 Claim agrees to a less favorable treatment, the Holder of an Allowed Class 2 Claim shall receive, in full and final satisfaction of, and in exchange for the Class 2 Claim, (i) payment in full in Cash of its Allowed Class 1 Claim from the segregated account established by the Sale Order; or (ii) the surrender of the collateral securing such Holder's Liens.

Class 2 is Unimpaired under the Plan. Holders of Allowed Claims in Class 2 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

3.      *Class 3* -  Class 3 shall consist of the Allowed Prepetition Alliance Loan Debt.  On the Effective Date, except to the extent that the Holder of the Allowed Class 3 Claim agrees to a less favorable treatment, the Holder of the Allowed Class 3 Claim shall receive, in full and final satisfaction of, and in exchange for the Class 3 Claim, an interest in the Liquidating Trust to be paid in Cash from the first Plan Distributions until such Allowed Class 3 Claim is paid in full.

Class 3 is Impaired under the Plan.  The Holder of the Allowed Claim in Class 3 is entitled to vote to accept or reject the Plan.

4.      *Class 4* – Class 4 shall consist of all Holders of Allowed General Unsecured Claims against any of the Debtors. On the Effective Date, and except to the extent that a Holder of an

Allowed General Unsecured Claim agrees to a less favorable treatment, Holders of Allowed Class 4 Claims shall receive, in full and final satisfaction of, and in exchange for each Class 4 Claim, an interest in the Liquidating Trust to be paid in Cash, subject to the priorities established above, from any Plan Distributions until such Allowed Class 4 Claim is paid in full.

Class 4 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.  For purposes of voting, Confirmation, and Plan Distributions, Allowed General Unsecured Claims in Class 4 against each of the Debtors shall be classified collectively.  To the extent a Holder of Class 4 Claims holds Claims against multiple Debtors, such Holder's votes shall also be classified collectively within Class 4. All Holders of Allowed Class 4 Claims shall be entitled to Plan Distributions on a Pro Rata basis from the Liquidating Trust on account of the Allowed Claims.

5.     *Class 5* – Class 5 shall consist of all Allowed Subordinated Claims against the Debtors, if any.  On the Effective Date, and except to the extent that a Holder of an Allowed Subordinated Claim agrees to a less favorable treatment, Holders of Allowed Class 5 Claims shall receive, in full and final satisfaction of, and in exchange for each Class 5 Claim, an interest in the Liquidating Trust to be paid in Cash, subject to the priorities established above, from any Plan Distributions until such Allowed Class 5 Claim is paid in full.

Class 5 is Impaired under the Plan and is entitled to vote to accept or reject the Plan. For purposes of voting, Confirmation, and Plan Distributions, Allowed Subordinated Claims in Class 5 against each of the Debtors shall be classified collectively.  To the extent a Holder of Class 5 Claims holds Claims against multiple Debtors, such Holder's votes shall also be classified collectively within Class 5. All Holders of Allowed Class 5 Claims shall be entitled to Plan Distributions on a Pro Rata basis from the Liquidating Trust on account of the Allowed Claims.

6.     *Class 6* – All Equity Interests and Membership Interests in ENGlobal U.S., ENGlobal Technologies, and ENGlobal Government Services are wholly owned by ENGlobal Corporation and therefore constitute Intercompany Interests which are not classified in the Plan. Accordingly, Class 6 shall consist solely of the Equity Interests of the Debtor ENGlobal Corporation. On the Effective Date, all Equity Interests in the Debtor shall be cancelled. Holders of Allowed Equity Interests in the Debtor shall receive an interest in the Liquidating Trust to be paid in Cash, subject to the priorities established above, from any Plan Distributions until such Allowed Class 6 Interest is paid in full.

The Debtors do not anticipate Holders of Allowed Equity Interests in Debtor ENGlobal Corporation will receive any Plan Distributions from the Liquidating Trust.  Accordingly, Class 6 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

**D.     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**E.**     <u>Elimination of Vacant Classes</u>

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan.

**F.**     <u>Voting Classes</u>

Classes 3, 4 and 5 are Impaired and are entitled to vote regarding acceptance or rejection of this Plan.  To the extent a Holder of a Claim in a Voting Class holds Claims against multiple Debtors, the Claims shall be tabulated for voting and Confirmation purposes as votes in a single consolidated Class.

**G.**     <u>Controversy Concerning Impairment</u>

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy concerning impairment on or before the Confirmation Date.  Failure to timely file an objection in the Chapter 11 Cases shall result in such Person or Entity waiving any objection to the Impairment classifications set forth in the Plan.

**H.**     <u>Subordinated Claims</u>

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective Plan Distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and Liquidating Trustee, as applicable, reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**I.**     <u>Cramdown</u>

If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may: (i) seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code; or (ii) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.

**J.**     <u>No Waiver</u>

Nothing contained in the Plan shall be construed to waive the Debtors' (prior to the Effective Date) or the Liquidating Trustee's (following the Effective Date) rights to object on any basis to any Claim or Interest.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Vesting of Assets in the Liquidating Trust**

On the Effective Date, the ENG Liquidating Trust shall be deemed duly formed and the Liquidating Debtors shall be deemed to have irrevocably transferred and assigned (in accordance with any applicable tax laws) to the Liquidating Trust, the Liquidating Trust Assets, to hold in trust for the Liquidating Trust Beneficiaries pursuant to the terms of this Plan and the Liquidating Trust Agreement attached hereto as **Exhibit B**.  Except as otherwise provided by this Plan, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with section 1141 of Bankruptcy Code.

**B.      Discharge of CRO**

On the Effective Date, the Chief Restructuring Officer shall be discharged and released from any further obligation or duty to the Debtors or their Estates.

**C.      The Liquidating Debtors and Reorganized Debtor**

1.      *Continued Corporate Existence*.  Except as otherwise provided in the Plan, Debtors ENGlobal Corporation, ENGlobal U.S. and ENGlobal Technologies shall continue to exist after the Effective Date as the Liquidating Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, including in accordance with their applicable organizational documents.  Debtor ENGlobal Government Services shall continue to exist after the Effective Date as the Reorganized Debtor with all Equity Interests in the Reorganized Debtor being transferred to Buyer at the Second Closing.  After the Effective Date, pursuant to this Plan, the Liquidating Trustee shall have the sole authority to manage the remaining affairs of the Liquidating Debtors without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The Liquidating Debtors shall operate solely to the extent required to liquidate the remaining Assets and Estate Property being transferred to the Liquidating Trust.

2.      *Winddown of the Debtors*.  At such time as the collection and liquidation of all available Estate Property and Liquidating Trust Assets is completed and satisfied, if applicable, the Liquidating Debtors may be dissolved.  The Liquidating Trustee shall have all power to wind up the affairs of the Liquidating Debtors under applicable state laws in addition to all the rights, powers, and responsibilities conferred by the Bankruptcy Code, this Plan, the Liquidating Trust Agreement, and may, but shall not be required to dissolve the Liquidating Debtors under applicable state law.

3.      *Corporate Action*.  Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects.  All matters provided for in this Plan involving the corporate structure of the Liquidating Debtors or Reorganized Debtor, and any corporate action required by the Debtors, Liquidating Debtors or Reorganized Debtor in connection with this Plan shall be deemed to have occurred and shall be in effect, without any

requirement of further action by the CRO, directors, officers, managers, or Interest Holders of the Debtors, Liquidating Debtors or Reorganized Debtor.

Before and after before the Effective Date, the CRO of the Debtors or the Liquidating Trustee, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effect the Second Closing and other transactions contemplated by this Plan).  The authorizations and approvals contemplated herein shall be effective notwithstanding any requirements under non-bankruptcy law.

4.    *Corporate Reorganization*.  On the Effective Date, and at the Second Closing, the Equity Interests of ENGlobal Government Services shall be deemed transferred and assigned to the Buyer pursuant to the APA, Sale Order, Plan and Confirmation Order, free and clear of all Liens, Claims and encumbrances.  Any and all Claims against Debtor ENGlobal Government Services shall be treated in accordance with the provisions of this Plan and Liquidating Trust Agreement.

## D.    **The Liquidating Trust**

The following provisions of this Section are intended to summarize the material terms of the Liquidating Trust Agreement, which shall control the formation, operations and dissolution of the Liquidating Trust.  In the event of any conflict between the terms of this Section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

1.    Formation of the Liquidating Trust. On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Liquidating Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust.  For the avoidance of doubt, entry the Confirmation Order shall constitute a finding that the Liquidating Trust exists and is a valid Entity for purposes of all non-bankruptcy law.

2.    Purpose of Liquidating Trust.  The Liquidating Trust shall be established only for the purposes of liquidating the Liquidating Trust Assets, including, but not limited to, prosecuting and resolving objections to Disputed Claims and Disputed Interests against the Debtors, with no objective to continue or engage in the pursuit of a trade or business. Notwithstanding any other section of this Plan or the Liquidating Trust Agreement. It is the express intent that the Liquidating Trust shall survive until such purpose is either achieved or determined to be impracticable or impossible.

3.    Authority of Liquidating Trustee.  Subject only to the limitations contained in this Plan, the Confirmation Order, or the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (i) the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets in accordance with the Plan; (ii) the power and authority to prosecute and resolve all Retained Causes Action; (iii) the power and authority to prosecute and resolve objections to Disputed Claims and Interests against or in the Debtors; and (iv) the power and authority to perform such other functions as are provided in the Plan and Liquidating Trust Agreement.

4.      Priority of Distribution of Liquidating Trust Assets.  The ENG Liquidating Trust, through the Liquidating Trustee, shall be responsible for making Plan Distributions from the Liquidating Trust Assets, or the proceeds thereof, on account of the following Claims or Interests in the order of priority shown: (i) to satisfy outstanding Allowed Priority Non-Tax Claims, if any; then (ii) to satisfy outstanding Other Secured Claims, if any; then (iii) to satisfy any Allowed Claim of the Prepetition Alliance Loan Debt; then (iv) to satisfy outstanding Allowed General Unsecured Claims on a Pro Rata basis, and finally, (v) to satisfy Allowed Equity Interests in accordance with such preferences or priorities as provided in this Plan.  For the avoidance of doubt, all expenses of the Liquidating Trust that are directly related to the administration of the Liquidating Trust Assets shall be taxed against the gross proceeds of the Liquidating Trust Assets and shall be satisfied prior to any subsequent Plan Distributions.  Other than these enumerated Claims, no other Claims against the Debtors or their Estates shall be charged against the Liquidating Trust.

5.      Procedure for Distribution of Liquidating Trust Assets.  The Liquidating Trustee shall make Plan Distributions in Cash in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts: (i) as would be distributable to a Holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Plan Distribution (but only until such Claim is resolved); (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during litigation; (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets); and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

6.      Compensation of the Liquidating Trustee.  The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

7.      Retention of Professionals by the Liquidating Trustee.  The Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in his or her duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval.  The Liquidating Trustee may retain any professional who represented parties in interest in these Chapter 11 Cases.

8.      Tax Returns.  The Liquidating Trustee shall file all necessary tax returns and other filings with Governmental Units on behalf of the Liquidating Debtors, the Liquidating Trust, and the Liquidating Trust Assets held therein pursuant to the terms of the Liquidating Trust Agreement.

9.      Tax Treatment.  For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations and that such trust be owned by its Liquidating Trust Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective shares in the applicable assets) and then contributed such interests to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as grantors and owners thereof.

10.     <u>Preservation of Right to Investigate</u>.  The preservation for the Liquidating Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets.  Accordingly, the Liquidating Trustee shall have the same rights as the Debtors to conduct investigations pursuant to Bankruptcy Rule 2004 as those held by the Debtors prior to the Effective Date to the maximum extent provided by applicable law.  Such powers to investigation pursuant to Bankruptcy Rule 2004, to the maximum extent provided by applicable law, shall vest with the Liquidating Trustee and shall continue until dissolution of the Liquidating Trust.

11.     <u>Termination and Dissolution</u>.  The Liquidating Trust shall terminate upon the date on which all of the Termination Conditions (as defined in the Liquidating Trust Agreement) have occurred: (i) the dissolution of the Liquidating Debtors pursuant to Article V Section D of this Plan; (ii) the Liquidating Trust Assets, including Causes of Action transferred and assigned to the Liquidating Trust, are fully resolved, abandoned or liquidated in accordance with the Plan and Liquidating Trust Agreement; (iii) all Cash has been completely distributed in accordance with the Plan and Liquidating Trust Agreement; (iv) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities; and (v) the order closing the Chapter 11 Cases is a Final Order.  Upon the occurrence of each of the foregoing events, the duties, responsibilities and powers of the Liquidating Trustee shall terminate, and the Liquidating Trustee shall be discharged.  Except in the circumstances set forth below, the Liquidating Trustee shall dissolve the Liquidating Trust in accordance with the provisions of this section no later than five (5) years after the Effective Date in accordance with applicable IRS revenue procedures.

The Bankruptcy Court may extend the term of the Liquidating Trust one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) for a finite period upon a showing of good cause and based on the particular circumstance at issue.  Each such extension must be approved by the Bankruptcy Court with notice thereof to all unpaid Liquidating Trust Beneficiaries.

Notwithstanding any other section of this Plan or the Liquidating Trust Agreement, it is the express intent that the Liquidating Trust shall survive until each of the Termination Conditions have either occurred or determined to be impracticable or impossible.  To the extent that the Liquidating Trust shall be deemed terminated pursuant to applicable law at any time prior to the occurrence of each Termination Condition, the Liquidating Trustee shall not be discharged, but shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding Termination Conditions, including, but, not limited to the authority to: (i) continue prosecuting any Causes of Action belonging to the Liquidating Trust; (ii) continue Claim administration responsibilities set forth in Article VII of the Plan; and (iii) distribute the Cash proceeds of the Liquidating Trust Assets in a manner consistent with the Plan and the Liquidating Trust Agreement, as applicable.  In no event shall the Liquidating Trust Beneficiaries be entitled to receive in-kind distributions of the Liquidating Trust Assets.

**ARTICLE VI.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.      Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan or Plan Documents, all Executory Contracts or Unexpired Leases that currently exist between the Debtors and another Person or Entity, shall be deemed rejected by the Debtors unless they were previously assumed or rejected by the Debtors pursuant to the Sale Order and APA, or other Final Order of the Bankruptcy Court.

**B.      Insurance Policies**

Notwithstanding any other provision of the Plan or Plan Documents, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, to the extent not previously assumed and assigned to Buyer pursuant to the Sale Order and APA, are expressly assumed by the Debtors and assigned to Liquidating Trust.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Liquidating Trust may hold against any Person or Entity related thereto.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Except as otherwise provided by the Sale Order or other Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Claims and Noticing Agent within thirty (30) calendar days after the later of: (i) the date of entry of any order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (ii) the effective date of such rejection; (iii) the Effective Date; or (iv) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Claims and Noticing Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, the Liquidating Trustee, or their property (including the Liquidating Trust Assets) without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims in Class 4.

**D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Notwithstanding any non-bankruptcy law to the contrary, the rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, Sale Order, Confirmation Order, or otherwise,

shall not constitute a termination of preexisting obligations owed to the Debtors, Liquidating Debtors, or the Liquidating Trustee, as applicable, under such Executory Contracts or Unexpired Leases.

## E.    Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Debtors' Schedules nor anything contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors or Liquidating Trust have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

## ARTICLE VII.
## CLAIM/INTEREST OBJECTION PROCEDURES; TREATMENT OF
## DISPUTED CLAIMS/INTERESTS; AND PROCEDURE FOR ASSERTING CLAIMS

## A.    Objection Process

Except insofar as a Claim is Allowed under the Plan, only the Liquidating Debtors or the Liquidating Trustee, as applicable, shall be entitled to object to Claims. Except as otherwise expressly provided in the Plan, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trustee shall have the exclusive authority: (i) to file, withdraw, or litigate to judgment objections to Claims; (ii) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Debtors' Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

Except as otherwise provided in the Plan or ordered by the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed and served no later than: (i) one hundred eighty (180) days after the later of (a) the Effective Date; or (b) the date on which a Proof of Claim, Proof of Interest or request for payment is filed with the Bankruptcy Court; or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

## B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

1.    *Record Date for Distribution*.  As of the close of business on the Distribution Record Date, the any transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be closed, and neither the Debtors, the Liquidating Trustee nor their respective agents shall be required to make any further changes in the record Holders of any of the Claims or Interests. The Debtors and Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Debtors and the Liquidating Trustee shall be entitled to recognize and deal for

all purposes hereunder only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

2.      *Delivery of Distributions in General*.   Except as otherwise provided herein, the Liquidating Trustee shall make Plan Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Plan Distribution; *provided*, *however*, that the manner of such Plan Distributions shall be determined at the discretion of the Liquidating Trustee; *provided further, however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim or Proof of Interest filed by that Holder.

3.      *Minimum Distributions*.   To the extent Cash is distributed under the Plan or the Liquidating Trust Agreement, no Plan Distribution of less than $50.00 shall be made to a Holder on account of any Allowed Claim or Interest, and such amounts shall be retained by the Liquidating Trustee and shall revert to the Liquidating Trust and be deemed to constitute a Liquidating Trust Asset.

4.      *Request for Tax Forms; Undeliverable Distributions; and Unclaimed Property*. Prior to making any Plan Distributions required under the Plan or the Liquidating Trust Agreement, the Liquidating Trustee may request that Holders provide an executed Form W-9 or Form W-8 as appropriate.   In the event that any Holder fails to execute and return such tax form within a reasonable time or if a tax form is returned as undeliverable (and the Liquidating Trustee is unable after reasonable efforts to determine the then-current address of such Holder), such Plan Distributions shall be deemed unclaimed property.

Further, if a Plan Distribution is returned as undeliverable, no further Plan Distributions to such Holder will be made unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.

The Liquidating Trustee shall file a Notice of Distribution within ten (10) Business Days of the date on which Plan Distributions are made under the Plan, which notice shall also identify any Holders having failed to return an executed Request for Tax Form. All Claims for undelivered or undeliverable Plan Distributions must be made no later than sixty (60) days following the date that the Notice of Distribution is filed.   After such date, all unclaimed Plan Distributions will revert to the Liquidating Trust for distribution in accordance with this this Plan and the Claim or Equity Interest of any Holder with respect to such Plan Distribution will be discharged and forever barred. Checks issued in respect of Allowed Claims or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

## C.      **Distributions to Holders of Disputed Claims**

Except as otherwise provided in the Plan, Plan Distributions on account of Disputed Claims shall be withheld by the Liquidating Trustee until such Claims have been either Allowed or disallowed by Final Order of the Bankruptcy Court.   To the extent a Disputed Claim becomes Allowed, any Plan Distribution reserved for such Claim shall be distributed to the Holder thereof. To the extent a Disputed Claim becomes disallowed, the Plan Distribution reserved for such Claim

shall revert to the Liquidating Trust automatically and without need for further order of the Bankruptcy Court.

**D.     Foreign Currency Exchange Rate**

As of the Effective Date, any Claim asserted in currency other than U.S. dollars, if any, shall be automatically deemed converted to the Cash equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

**E.     Setoffs and Recoupment**

Except as expressly provided in the Plan, or otherwise ordered by the Bankruptcy Court, the Liquidating Trustee may, pursuant to section 553 of the Bankruptcy Code, withhold, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim or Interest, any and all claims, rights, and Causes of Action, including contingent or unliquidated claims, that the Debtors or the Liquidating Trust may hold against the Holder of such Allowed Claim or Interest; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust or its successor of any and all claims, rights, and Causes of Action that the Debtors, the Liquidating Trust, or their successor(s) may possess against the applicable Holder.  In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors, Liquidating Debtors, or the Liquidating Trust, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII Section E of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**F.     Claims Paid or Payable by Third Parties**

1.     *Claims Paid by Third Parties*.   The Debtors, Liquidating Debtors, or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Liquidating Trustee, including, for the avoidance of doubt any payment from the proceeds of any insurance policy purchased by or for the benefit of the Debtors or the Debtors' officers and directors, if any.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Plan Distribution on account of such Claim and receives payment from a party that is not the Debtors or Liquidating Trustee, such Holder shall, within fourteen (14) days of receipt thereof, repay or return any Plan Distribution received from the Liquidating Trustee to the extent the Holder's total recovery exceeds the amount such Holder was entitled to receive under the Plan on account of the Claim. The failure of such Holder to timely repay or return such Plan Distribution shall result in the Holder owing the Liquidating Trustee annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      *Claims Payable by Third Parties*.  No Plan Distributions under the Plan shall be made on account of an Allowed Claim that is payable under any insurance policy purchased by or for the benefit of the Debtors or the Debtors' officers and directors, if any, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent the underlying claim forming the basis of the Claim against the Debtors is adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement to satisfy all or part of the Claim, the applicable portion of such Claim against the Debtors shall be deemed expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      *Application of Insurance Policies*.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## G.      **Estimation of Claims and Interests**

Before or after the Effective Date, the Debtors or the Liquidating Trustee, as the case may be, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of Plan Distributions), and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Plan Distribution on such Claim or Interest.

## H.      **Adjustment to Claims or Interests Without Objection**

Any duplicate Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Debtors or Liquidating Trustee without any further notice to or action, order, or approval of the Bankruptcy Court.

### I.      Disallowance of Claims or Interests

Except as otherwise specifically provided in the Plan or a Final Order of the Bankruptcy Court, any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any Plan Distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered.

Except as provided herein or otherwise agreed by the Debtors or Liquidating Trustee, any and all Proofs of Claim or Proofs of Interest filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Plan Distributions on account of such Claims or Interests, unless on or before the Confirmation Hearing such late Claim or Interest has been deemed timely filed by a Final Order.

### J.      Amendments to Claims or Interests

On or after the Effective Date, a Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee and any such new or amended Claim or Interest filed without such authorization shall be deemed disallowed in full and expunged without any further action.

### ARTICLE VIII.
### EFFECT OF CONFIRMATION

### A.      Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Plan Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Plan Distribution to be made on account of such Allowed Claim or Allowed Interest.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Allowed Claims and Allowed Interests, and is fair, equitable, and reasonable.

### B.      Legally Binding Effect

The provisions of this Plan shall bind: (i) all Holders of Claims and Interests, whether or not they accept this Plan; and (ii) the Debtors, Liquidating Debtors, Reorganized Debtor, Liquidating Trustee, DIP Lender and the Buyer. On and after the Effective Date, all Holders of

Claims shall be precluded and enjoined from asserting any Claim: (a) against the Debtors or their remaining Estate Property or and Liquidating Trust Assets based on any transaction or other activity of any kind that occurred prior to the Confirmation Date; (b) against ENGlobal Government Services for any action arising on or before the Effective Date, and, (c) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

## C.       **Release of Liens**

Except as otherwise provided in the Plan, or any contract, instrument, release, or other Plan Document created pursuant to the Plan, on the Effective Date and concurrently with the applicable Plan Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any Estate Property shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trust and its successors and assigns.  On and after the Effective Date, any Holder of such Secured Claim (and the applicable agents for such Holder), at the expense of the Liquidating Trust, shall be authorized and may be directed to release any collateral or other property of any Debtors (including any Cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.  For the avoidance of doubt, this Section shall not apply to those certain Liens held by any Governmental Unit for amounts owed by the Debtors for taxes, including, but not limited to, *ad valorem* property taxes, unless and until such tax Claims have been paid in full.

## D.       **Injunction and Continuation of Automatic Stay**

The Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtors and their Assets and properties and any proceedings not yet instituted against the Debtors or their Assets and properties, except as otherwise provided in the Plan.  Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Liquidating Trust, or their property, with respect to any such Claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtors or the Liquidating Trust, or their property; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Liquidating Trust, or their property, with respect to such Claim; (iv) asserting any right of subrogation of any kind against any obligation due to the Debtors or the Liquidating Trust, or the property of the Debtors, the Estates or the Liquidating Trust with respect to any such Claim; or (v) asserting any right of setoff or recoupment against the Debtors, the Estates or the Liquidating Trust; *provided*, *however*, that any right of setoff or recoupment may be asserted defensively only.

Unless otherwise provided in the Plan or by Final Order of the Bankruptcy Court, all injunctions or automatic stays provided for in the Chapter 11 Cases pursuant to section 105, if any, or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until entry of a Final Decree in these Chapter 11 Cases at which time all such injunctions and automatic stays shall no longer be in effect.

**E.    Exculpation**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE PLAN DOCUMENTS OR PLAN SUPPLEMENT, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**F.    Preservation of Debtors' Claims and Causes of Action**

Confirmation of this Plan effects no settlement, compromise, waiver or release of any Cause of Action or claim for relief of the Debtors' Estates unless this Plan or the Confirmation Order specifically and unambiguously so provides. **Exhibit A** of this Plan describes: (i) those Causes of Action or claims for relief collectively constituting the Retained Causes of Action

currently known to the Debtors; and (ii) circumstances currently known to the Debtors that may give rise to a Retained Cause of Action or other claim for relief. Notwithstanding anything herein to the contrary, the Retained Causes of Action set forth on **Exhibit A** are not being released, are expressly preserved, and constitute Liquidating Trust Assets that will be transferred to the Liquidating Trust. The non-disclosure or non-discussion of any particular Cause of Action or claim for relief as a Retained Cause of Action in **Exhibit A** is not, and shall not be construed as, a settlement, compromise, waiver, or release of any such Cause of Action or claim for relief.

Except as expressly waived, relinquished, released, compromised or settled in the Plan, Confirmation Order, or other Final Order of the Bankruptcy Court, the Debtors and the Liquidating Trustee of the Liquidating Trust reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Distribution Record Date or any Plan Distribution date, including, without limitation, any and all Causes of Action, and/or claims for relief that the Debtors or the Liquidating Trust may have against: (i) any party described or related to the events described in **Exhibit A** hereto; and (ii) any insurer and/or insurance policies in which either the Debtors have an insurable or other interest in or right to make a claim against, any other of the Debtors' insurers. The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Liquidating Trustee, in his or her capacity as trustee for the Liquidating Trust, relating to any claims or Causes of Action referred to in this Plan, or otherwise. The Liquidating Trustee shall constitute the representative of the Debtors for purposes of retaining, asserting and/or enforcing Retained Causes of Action under section 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against any Debtor without need for further order of the Bankruptcy Court.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to Effectiveness

The following conditions precedent shall be satisfied or waived in writing, in accordance with Article IX Section B hereof, prior to the occurrence of the Effective Date of the Plan:

1.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors, and the Confirmation Order shall not: (i) have been reversed or vacated; (ii) be subject to a then-effective stay; or (iii) have been modified or amended;

2.    The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall be in form and substance acceptable to the Debtors; and,

3.    The Liquidating Trust Agreement, in a form and substance acceptable to the Debtors, shall be fully executed.

B.     **Waiver of Conditions**

The conditions to Confirmation and the Effective Date set forth in this Article may be waived only with the prior written consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.     **Effect of Failure of Conditions**

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of Claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Person or Entity.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.     **Modifications and Amendments**

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan whether such modification is material or immaterial and seek Confirmation consistent with the Bankruptcy Code.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors expressly reserve their rights to revoke or withdraw, or, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.     **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan made pursuant Article X Section A, above, are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure under Bankruptcy Rule 3019.

C.     **Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any

manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are or were a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is or was assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that Plan Distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve all matters related to section 1141 of the Bankruptcy Code;

7.      Enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

8.      Enter and enforce any order for the sale of Estate Property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Person or Entity with respect to Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the exculpation, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary to implement or enforce such exculpation, injunctions and other provisions;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Plan Distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII Section F hereof;

13.     Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15.     Enter an order concluding or closing, on a temporary or final basis, the Chapter 11 Cases;

16.     Adjudicate any and all disputes arising from or relating to Plan Distributions;

17.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges and injunctions granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22.     Enforce all Final Orders previously entered by the Bankruptcy Court; and

23.     Hear any other matter not inconsistent with the Bankruptcy Code.

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

**A.     Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Liquidating Trustee, as applicable, and all Holders of Claims or Interests receiving Plan Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**B.     Payment of Statutory Fees**

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Liquidating Trustee for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed – whichever occurs first.

**C.     Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of an action by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**D.     Successors & Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**E.     Notices**

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including any facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

OKIN ADAMS BARTLETT CURRY LLP
Christopher Adams
Ryan A. O'Connor
John Thomas Oldham
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158
cadams@okinadams.com
roconnor@okinadams.com
joldham@okinadams.com

**F.     Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Documents) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which are deemed merged and integrated into the Plan.

**G.     Exhibits**

All Exhibits attached to the Plan or filed in the Chapter 11 Cases in connection with the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the Exhibits and documents are filed, copies of such Exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such Exhibits and documents from the Bankruptcy Court's CM/ECF system.  To the extent any Exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**H.     Nonseverability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (iii) nonseverable and mutually dependent.

**I.**     **Plan Proposed in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have proposed the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, members of the Board of Directors of Debtor ENGlobal Corporation, the CRO, and the Debtors' Professionals will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, none of the foregoing Persons or Entities will have any liability for the violation of any applicable law, rule, or regulation governing the proposal of the Plan or participation in the Chapter 11 Cases.

**J.**     **Closing the Chapter 11 Cases**

After the Effective Date, the Liquidating Trustee shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the UST that closes and issues a final decree for each of the Chapter 11 Cases. Further, the Liquidating Trustee shall, promptly after the administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**K.**     **Waiver or Estoppel**

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any arguments, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors, or its counsel, or any other Entity, if such agreement was not expressly disclosed in the Plan or Plan Documents with the Bankruptcy Court prior to the Confirmation Date.

**L.**     **Controlling Document**

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

*[Remainder of Page Intentionally Left Blank]*

Respectfully submitted on the 28th day of May, 2025.

**ENGlobal Corporation,** *et al.*

By:   */s/ John D. Baumgartner*          
      John D. Baumgartner
      Chief Restructuring Officer

**OKIN ADAMS BARTLETT CURRY LLP**

By:   /s/ Christopher Adams           
      Christopher Adams
      Texas Bar No. 24009857
      Email: cadams@okinadams.com
      Ryan A. O'Connor
      Texas Bar No. 24098190
      Email: roconnor@okinadams.com
      John Thomas Oldham
      Texas Bar No. 24075429
      Email: joldham@okinadams.com
      1113 Vine St., Suite 240
      Houston, Texas 77002
      Tel: 713.228.4100
      Fax: 346.247.7158

**ATTORNEYS FOR THE DEBTORS**

**Exhibit A**

**<u>Retained Causes of Action</u>**

## Schedule of Retained Causes of Action

Pursuant to the *Joint Combined Chapter 11 Plan and Disclosure Statement,* dated May 28, 2025 (as may be further amended, modified, or supplemented, the "Plan"),[1] the Liquidating Trust is being established as a grantor trust for the purpose of liquidating and distributing the Liquidating Trust Assets to the Liquidating Trust Beneficiaries in accordance with the Plan. Liquidating Trust Assets is defined in the Plan to include, among other things, all Retained Causes of Action, Avoidance Actions (to the extent designated as Excluded Actions as defined in the Sale Order and accompanying APA), and the proceeds thereof.

The Retained Causes of Action set forth below are not being released, are expressly preserved, and constitute Liquidating Trust Assets that will be transferred to the Liquidating Trust. In addition, unless a Cause of Action that is not otherwise listed below as a Retained Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, Confirmation Order, or any other Final Order of the Bankruptcy Court, the Debtors expressly reserve such Causes of Action (including any counterclaims) as Retained Causes of Action for later adjudication by the Liquidating Trustee on behalf of the Liquidating Trust. Therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action (including counterclaims) on or after the Confirmation Date. All Retained Causes of Action shall be preserved for the benefit of the Liquidating Debtors, collectively and individually, and the Liquidating Trust, as appropriate, whether or not brought by the Debtor(s) prior to the Effective Date of the Plan.

Without limiting the generality of Article VIII Section F of the Plan, the following shall constitute Retained Causes of Action:

## 1.    Causes of Action Designated as "Excluded Actions" in the Sale Order and APA

Retained Causes of Action shall include all Causes of Action designated and defined as Excluded Assets pursuant to the Sale Order and APA.

## 2.    Causes of Action Related to Avoidance Actions

Retained Causes of Action shall include, to the extent included as Excluded Assets as defined in the Sale Order and APA, all Causes of Action in which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, and/or a transfer is avoidable under sections 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code. Such Causes of Action, specifically include, but are not limited to, any and all potential preference claims under section 547 of the Bankruptcy Code related to transfers made within the ninety (90) days before the Debtors' Petition Date on account of an antecedent debt owed by the respective Debtor as identified by the Debtors in their respective Statement of Financial Affairs.[2]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[2] Reference to documents in the record of the Chapter 11 Cases shall mean that such documents referenced are incorporated herein as if copied *in extenso*.

Further, Retained Causes of Action specifically include, but are not limited to, any and all potential Insider preference claims under section 547 of the Bankruptcy Code related to transfers to an Insider made between the ninety (90) days and one (1) year before the filing of the Chapter 11 Cases on account of an antecedent debt owed by any Debtor as identified by the Debtors in their respective Statement of Financial Affairs.

Further, such Causes of Action specifically include, but are not limited to, any and all potential fraudulent transfer claims as may be asserted under Bankruptcy Code sections 544 and 548, and the applicable state law fraudulent transfer statutes, to transfers made within the applicable lookback time period applicable to the particular fraudulent transfer statute, including any and all transfers identified by the Debtors in their respective Statement of Financial Affairs (specifically including all transfers previously identified in this paragraph) and any transfers made to Insiders.

**3.**     **Causes of Action Related to Current or Former Insiders and/or Related Entities**

Retained Causes of Action shall include, to the extent included as Excluded Assets as defined in the Sale Order and APA, all Causes of Action against or related to all current or former Insiders (including directors and/or officers) and/or related Entities, including claims or actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial. Such Causes of Action specifically include, but are not limited to: (i) any claims against such parties for mismanagement and/or the breach of any fiduciary duty arising under applicable law, including without limitation, the duties of loyalty and care; and (ii) any and all potential claims related to transfers made within the four (4) year period before the filing of the Chapter 11 Cases, specifically including those transfers identified by the Debtors in their respective Statement of Financial Affairs.

*[Remainder of Page Intentionally Left Blank]*

**Exhibit B**

**<u>Liquidating Trust Agreement</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 25-90083** |
| **ENGLOBAL CORPORATION,** *et al.,* | § | |
| | § | **Chapter 11** |
| Debtors.[1] | § | |
| | § | **(Jointly Administered)** |

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "Agreement"), is made this [13th] day of June, 2025 (the "Effective Date"), by and among ENGlobal Corporation, *et al.* (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned bankruptcy cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), and John D. Baumgartner, as Liquidating Trustee (in such capacity as Liquidating Trustee of the Liquidating Trust, the "Liquidating Trustee" or "Trustee"), for the benefit of the Liquidating Trust Beneficiaries (as defined in the *Joint Combined Chapter 11 Plan and Disclosure Statement* [ECF # 135] (as may be amended, the "Plan") entitled to proceeds of the Liquidating Trust Assets (as defined in the Plan).

## RECITALS

A.     Entry of the Confirmation Order (as defined in the Plan) shall constitute a finding that the Liquidating Trust exists and is a valid entity for purposes of all non-bankruptcy law.

B.     This ENGlobal Liquidating Trust (the "Trust" or the "Liquidating Trust") is established, pursuant to the Plan, as a liquidating trust for the sole purpose of liquidating the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of this Trust and the terms of the Plan.

C.     Capitalized terms used in this Agreement and not defined herein have the meanings ascribed to them in the Plan, or if not defined in the Plan, the meanings ascribed to them in the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and in the Plan; the Debtors and the Trustee agree as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: ENGlobal Corporation (2261); ENGlobal U.S., Inc. (0616); ENGlobal Government Services, Inc. (0196); and ENGlobal Technologies LLC (1664). The Debtors' service address is: 11740 Katy Fwy., Ste. 350, Houston, Texas 77079.

# ARTICLE I
# DEFINITIONS

1.01    <u>Definitions</u>.

"<u>Beneficiaries</u>" means the holder of a beneficial interest in this Liquidating Trust, which shall be distributed in accordance with section 5.02 herein.

"<u>Distribution</u>" means a Distribution of property to a Beneficiary pursuant to this Agreement.

# ARTICLE II
# PURPOSE OF THE TRUST

2.01    <u>Purpose</u>.  The Liquidating Trust shall be established, in accordance with Treasury Regulation Section 301.7701-4(d), only for the purposes of liquidating and distributing the Liquidating Trust Assets, including, but not limited to prosecuting and resolving objections to Disputed Claims against the Debtors, with no objective to continue or engage in the pursuit of a trade or business; *provided*, *however*, that the Liquidating Trustee shall be authorized to take all actions necessary and appropriate to pursue, collect and liquidate any Liquidating Trust Assets in accordance with and subject to the provisions of the Plan. Notwithstanding any other section of the Plan or this Agreement, it is the express intent that the Liquidating Trust shall survive until such purpose is either achieved or determined to be impracticable or impossible.

# ARTICLE III
# ESTABLISHMENT OF THE TRUST

3.01    <u>Name of the Trust</u>.  The name of the Trust shall be the ENGlobal Liquidating Trust.

3.02    <u>Transfer of Liquidating Trust Assets to the Trust</u>.  Except as otherwise provided by the Plan or this Agreement, on the Effective Date, the Liquidating Trust Assets shall be deemed transferred to the Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

3.03    <u>Title to the Liquidating Trust Assets</u>.  The Trustee shall hold title to the Liquidating Trust Assets for the benefit of the Beneficiaries, subject to the terms of the Plan and this Agreement. The Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries, and then by such Beneficiaries to the Trust in exchange for interests (the "<u>Liquidating Trust Beneficial Interests</u>") for the benefit of such holders in accordance with the Plan.  Accordingly, the holders of the Liquidating Trust Beneficial Interests as of the Effective Date shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Trust.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local and tax purposes.

3.04    <u>Appointment of the Trustee</u>.  Pursuant to the Confirmation Order, John D. Baumgartner has been designated to serve as the Trustee, and the Trustee hereby accepts such appointment and agrees to serve in such capacity, as of the Effective Date.  The Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B).

3.05    Rights of Debtors.  On the Effective Date, the Trustee shall succeed to all of the Debtors' right, title and interest in the Liquidating Trust Assets, but subject to the terms of the Plan and this Agreement, and the Debtors or Liquidating Debtors, as applicable, will have no further interest in or with respect to the Liquidating Trust Assets or this Trust.  The Trustee shall be vested with all rights and discretion regarding the Liquidating Trust Assets.  In no event shall any part of the Liquidating Trust Assets revert to or be distributed to the Debtors or Liquidating Debtors.

3.06    Grantors.  Pursuant to the Plan, the Debtors have agreed to contribute certain property to the Trust and have agreed to the terms of this Agreement solely in their capacity as Grantors.

3.07    Nontransferability.  The Liquidating Trust Beneficial Interests shall be nontransferable, except upon the Trustee's written consent, which may be withheld for any reason in the Trustee's sole and absolute discretion.

## ARTICLE IV
## THE TRUSTEE

4.01    Authority of the Trustee.  The Trustee is hereby empowered to, subject to the limitations set forth in this Agreement, take any and all actions to effectuate the purpose of the Trust.  Without limiting the generality of the previous sentence, the Trustee shall have the power to, for the benefit of the Beneficiaries:

(i)    receive, hold, manage, sell, prosecute, resolve, invest, supervise, protect and liquidate the Liquidating Trust Assets;

(ii)    withdraw, make Distributions or Plan Distributions, as applicable, and pay taxes and other obligations owed by Debtors, Liquidating Debtors, or the Trust from the funds held or otherwise received by the Trust in accordance with the Plan or applicable law;

(iii)    execute, deliver, file, and record contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such actions, as it may deem reasonably necessary or appropriate to effectuate and implement the terms and conditions thereof or of the Plan;

(iv)    calculate and implement Distributions to Beneficiaries and other Plan Distributions to Holders of Allowed Claims out of the Liquidating Trust Assets or other Cash received and held by the Trust in accordance with the Plan;

(v)    protect, preserve, and enforce the rights to, the Liquidating Trust Assets by any method deemed appropriate, including by judicial proceeding before the Bankruptcy Court or other court of competent jurisdiction;

(vi)    compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise resolve or settle, in accordance with the terms hereof, Claims in favor of, or against, the Debtors, Liquidating Debtors, or the Trust;

(vii)    determine and satisfy any and all liabilities created, incurred, or assumed by the Liquidating Debtors or the Trust;

(viii)    pay all expenses of the Trust and make other payments relating to the Liquidating Trust Assets;

(iv)    obtain and maintain insurance coverage with respect to the liabilities and obligations of the Trustee and the Trust (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(x)    obtain and maintain insurance coverage with respect to real and personal property which may become Liquidating Trust Assets, if any;

(xi)    retain and pay such third parties, including, one or more paying agents or counsel, as the Trustee may deem necessary or appropriate in its sole and reasonable discretion to assist the Trustee in carrying out its powers and duties to the Trust under this Agreement;

(xii)    exercise such other powers as may be vested in or assumed by the Liquidating Debtors, the Trust or the Trustee pursuant to the Plan, Confirmation Order, or Final Order of the Bankruptcy Court, or as may be necessary, proper and appropriate to carry out the provisions of the Plan;

(xiii)    prosecute and resolve objections to Disputed Claims against the Debtors that are payable from the Liquidating Trust Assets; and

(xiv)    file all necessary tax returns and other filings with Governmental Units on behalf of the Liquidating Debtors, the Trust and the Liquidating Trust Assets held therein pursuant to the terms of this Agreement.

4.02    Limitations on Trustee's Authority.

(i)    The Trustee is not authorized to engage in any trade or business with respect to the Liquidating Trust Assets, and shall engage only in activity reasonably necessary to, and consistent with, the liquidating purpose of the Trust.  All actions taken by the Trustee shall be consistent with the expeditious but orderly liquidation of the Liquidating Trust Assets as is required by applicable law and consistent with the treatment of the Trust as a liquidating trust under Treasury Regulation Section 301.7701-4(d).

(ii)    In all circumstances, the Trustee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Trust.

(iii)    The Trustee shall liquate and convert to Cash the Liquidating Trust Assets in an expeditious but orderly manner, make timely Distributions, and not unduly prolong the duration of the Trust.

(iv)    Any investments of the Cash portion of the Liquidating Trust Assets by the Trustee must be permitted investments for a liquidating trust within the meaning of Treasury

Regulation Section 301.7701-4(d), or under applicable Internal Revenue Service guidelines, rulings, or other controlling authority.

4.03    <u>Discretion</u>.  Subject to express provisions of this Agreement and the Plan, the Trustee shall have absolute discretion to pursue, or not pursue, any and all claims, rights, or Causes of Action, as it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Trust, and shall not have liability for the outcome of his decisions.  The Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash.

4.04    <u>Retention of Professionals</u>.  The Trustee may retain and reasonably compensate counsel and other professionals to assist in his duties as Trustee on such terms as the Trustee deems appropriate without Bankruptcy Court approval. The Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.  The Trustee shall be entitled to rely, in good faith, on the advice of his or her retained professionals.

4.05    <u>Liability of Trustee and His or Her Agents</u>.  Neither the Trustee, nor the employees, professionals, agents, and representatives of the Trust or the Trustee (collectively the "<u>Covered Persons</u>"), shall be held liable for actions taken or omitted in its capacity as, or on behalf of, the Trust or Trustee, except to the extent that such actions taken or not taken after the Effective Date by the Covered Persons are determined by Final Order to be solely due to such Covered Person's gross negligence, fraud, or willful misconduct. All Persons or Entities dealing with the Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Trustee in carrying out the terms of this Agreement, and, subject to the preceding portions of this section, none of the Covered Persons shall have any personal obligation to satisfy any such liability.

4.06    <u>Compensation of the Trustee and Other Employees</u>.  Following the Effective Date, the Trustee shall be compensated on an hourly basis at the Trustee's standard hourly rate, to be paid each month until the Chapter 11 Cases are dismissed or closed, and shall be entitled to reimbursement of all reasonable expenses incurred by the Trustee in discharging his duties hereunder.  The Trustee may pay his or her compensation and other costs, expenses and repayment obligations of the Trust before approving or making any Distributions to the Beneficiaries.

4.07    <u>Exculpation; Indemnification</u>.  All of the Covered Persons shall be, and hereby are, exculpated by all Persons and Entities, including the Beneficiaries, from any and all claims, Causes of Action and other assertions of liability arising out of the discharge of the powers and duties conferred upon them by the Plan, this Agreement, or any Final Order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, or by applicable law, except for actions or omissions that are determined by a Final Order to have arisen out of its or their own willful misconduct, fraud, or gross negligence.  No Person or Entity shall have, or be permitted to pursue, any claim or Cause of Action against any of the Covered Persons for making payments in accordance with the Plan, or for implementing any other provision of the Plan.  To the fullest extent permitted by applicable law, the Trust shall indemnify, defend, and hold harmless the Covered Persons from and against any and all losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements, and related expenses that the Covered Persons may incur or to which the Covered Persons may become subject in

connection with any actions or inactions in their capacity as such, except for actions or inactions involving willful misconduct, fraud, or gross negligence.  The Covered Persons shall be entitled to obtain advances from the Trust to cover their reasonable fees and expenses incurred in defending any such actions or inactions.  The foregoing indemnity in respect of any Covered Person shall survive the termination of such Covered Person from the capacity for which they are indemnified.

4.08    Termination.    The duties, responsibilities and powers of the Trustee shall terminate on the date the Trust is dissolved; *provided*, *however*, that Sections 4.05-4.07 shall survive such termination and dissolution.

4.09    Resignation, Death, or Removal.    The Trustee or any successor trustee may resign upon thirty (30) days' notice by an instrument in writing signed by the Trustee and filed with the Bankruptcy Court.  The Trustee or any successor may be removed at any time with or without cause by the Bankruptcy Court.  Any party in interest may apply to the Bankruptcy Court for an order removing the Trustee for cause, with the determination of cause left to the reasonable discretion of the Bankruptcy Court.  In the event of the removal of the Trustee, the Trustee shall be entitled to immediate payment of all compensation earned through and including the effective date of such removal.

4.10    Successor Trustee.    In the event of resignation, death, or removal, as provided herein, any party in interest, any professional for the Trustee, the Trustee, or the United States Trustee may seek to designate a successor trustee and the Bankruptcy Court shall appoint a successor trustee to perform the duties, functions, and obligations, and to exercise the rights and authority of Liquidating Trustee, as described in the Plan.  Any successor to the initial Trustee shall execute an instrument accepting such appointment and shall file such acceptance with the Trust records and with the Bankruptcy Court.

## ARTICLE V
## DISTRIBUTIONS

5.01    Distributions to Beneficiaries.    The Trustee shall distribute Cash in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Trust in accordance with the Plan or this Agreement. The timing and amount of each Distribution by the Trustee shall be determined by the Trustee and shall be consistent with the terms set forth in the Plan, any applicable order of the Bankruptcy Court, and this Agreement.

5.02    Priority of Distribution of Liquidating Trust Assets.    The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing Liquidating Trust Assets, or the proceeds thereof, on account of the following Claims or Interests in the order of priority shown:

(i) to satisfy outstanding Allowed Priority Non-Tax Claims, if any; then (ii) to satisfy outstanding Other Secured Claims, if any; then (iii) to satisfy outstanding Allowed Prepetition Alliance Loan Debt Claims; then (iv) to satisfy Allowed General Unsecured Claims on a *Pro Rata* basis; then (v) to satisfy Allowed Subordinated Claims, if any; and finally, (v) to satisfy Allowed Equity Interests in accordance with such preferences or priorities as provided in the Plan. For the avoidance of doubt, all expenses of the Liquidating Trust that are directly related to the administration of the Liquidating Trust Assets shall be taxed against the gross proceeds of the Liquidating Trust Assets and shall be satisfied prior to any subsequent Plan Distributions. Other than the enumerated Claims, no other Claims against the Debtors or their Estates shall be charged against the Liquidating Trust.

5.03  Administration of Distributions.

(i)  Manner of Payment.  At the option of the Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer.

(ii)  No Fractional Payments.  Whenever a payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down to the nearest whole dollar.

(iii)  De Minimis Distributions. Notwithstanding anything to the contrary contained in the Plan or this Agreement, the Trustee shall not be required to distribute Cash to a Beneficiary if the amount of Cash to be distributed on account of such Claim is less than $50. Any Holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $50 shall have such Claim discharged and shall be forever barred from asserting any such Claim against the Liquidating Debtors, the Trust, or their respective property. Any Cash not distributed pursuant to this provision shall be the property of the rust, free of any restrictions thereon. The Trustee may, in his or her sole discretion, remit any Cash not distributed or otherwise utilized by the Trust pursuant to this section of Agreement to the State of Texas and/or pay such Cash into the registry of the Bankruptcy Court.

(iv)  Setoffs. The Trustee may set off against any Distributions to be made to a Beneficiary hereunder, claims, rights and Causes of Action of any nature that the Trustee may at any time hold against such Beneficiary; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Trustee of any such claim, right and Causes of Action that the Trustee may at any time possess against such Beneficiary.

(v)  Disputed Payments. If any dispute arises as to the identity of a Beneficiary who is to receive any Distribution, the Trustee may, in lieu of making such Distribution to such Person, make reserve for such Distribution. Such Distribution shall be held in reserve until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

(vi)  Unclaimed Distributions.  In the event any Distribution to any Beneficiary is returned as undeliverable, the Trustee shall use commercially reasonable efforts to determine the current address of such Beneficiary.  No additional Distribution shall be made to such

Beneficiary until the Trustee has notified in writing of such Beneficiary's then-current address, at which time the Distribution shall be made to such Beneficiary. The Trustee shall file a Notice of Distribution within ten (10) Business Days of the date on which Distributions are made under the Plan, which notice shall also identify any Beneficiaries having failed to return an executed Request for Tax Form. All Claims for undelivered or undeliverable Distributions must be made no later than sixty (60) days following the date that the Notice of Distribution is filed. After such date, all unclaimed Distributions will revert to the Trust for distribution in accordance with this the Plan and this Agreement, and the Claim or Equity Interest of any Beneficiary with respect to such Distribution will be discharged and forever barred. Checks issued in respect of Allowed Claims or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

(vii)   <u>Abandonment</u>.   The Trustee may abandon, in any commercially reasonable manner, any property that the Trustee reasonably concludes is of no benefit to the Beneficiaries.

**ARTICLE VI**
**<u>DISSOLUTION OF TRUST</u>**

6.01   <u>Dissolution</u>.   The Trust shall terminate upon the date on which all of the following events (each, a "<u>Termination Condition</u>," and, collectively, the "<u>Termination Conditions</u>") have occurred: (i) the dissolution of the Liquidating Debtors pursuant to the Plan; (ii) the Liquidating Trust Assets, including Retained Causes of Action transferred and assigned to the Trust, are fully resolved, abandoned or liquidated in accordance with the Plan and this Agreement; (iii) all Cash has been completely distributed in accordance with the Plan, Settlement Term Sheet, and this Agreement; (iv) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities; and (v) the order closing the Chapter 11 Cases is a Final Order. Upon the occurrence of each of the foregoing events, the duties, responsibilities and powers of the Trustee shall terminate, and the Trustee shall be discharged. Except in the circumstances set forth below, the Trustee shall dissolve the Trust in accordance with the provisions of this section no later than five (5) years after the Effective Date in accordance with applicable IRS revenue procedures.

The Bankruptcy Court may extend the term of the Trust one or more times (not to exceed a total of four (4) extensions, unless the Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) for a finite period upon a showing of good cause and based on the particular circumstance at issue. Each such extension must be approved by the Bankruptcy Court with notice thereof to all unpaid Beneficiaries.

Notwithstanding any other section of the Plan or this Agreement, it is the express intent that the Trust shall survive until each of the Termination Conditions have either occurred or be determined to be impracticable or impossible. To the extent that the Trust shall be deemed terminated pursuant to applicable law at any time prior to the occurrence of each Termination Condition, the Trustee shall not be discharged, but shall have such "wind-up" powers, both express and implied, as are necessary to achieve all outstanding Termination Conditions, including, but, not limited to the authority to: (i) continue prosecuting any Causes of Action belonging to the Trust; (ii) continue Claim administration responsibilities set forth in the Plan;

and (iii) distribute the Cash proceeds of the Liquidating Trust Assets in a manner consistent with this Agreement.  In no event shall the Liquidating Trust Beneficiaries be entitled to receive in-kind distributions of the Liquidating Trust Assets.

6.02    Post-Dissolution.  Upon liquidation and distribution of all the Liquidating Trust Assets, the Trustee shall retain the books, records and files that shall have been created by the Trustee; *provided*, *however*, that at his or her sole discretion, all of such records and documents may be destroyed at any time following the date of final Distribution of Liquidating Trust Assets as the Trustee deems appropriate (unless the records and documents are necessary to fulfill the Trustee's obligations pursuant to this Agreement).

## ARTICLE VII
## AMENDMENT AND WAIVER

7.01    Amendment; Waiver.    The Trustee may amend, supplement, or waive any non-substantive provision of this Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any nonmaterial or non-substantive ambiguity, omission, defect, or inconsistency in this Agreement, provided that such amendments, supplements or waivers shall not adversely affect (a) the Distributions to any of the Beneficiaries, (b) Plan Distributions to the Buyer or other Holders of Allowed Claims in accordance with the Settlement Term Sheet, or (c) adversely affect the U.S. federal income status of the Trust as a "liquidating trust"; or (ii) comply with any requirements in connection with the U.S. federal income tax status of the Trust as a "liquidating trust."  Any substantive provision of this Agreement may be amended, supplemented, or waived by the Trustee, with the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement that would: (i) adversely affect (a) the Liquidating Debtors (absent such party or parties' consent), (b) the Distributions to any of the Beneficiaries, (c) Plan Distributions to the Buyer or other Holders of Allowed Claims in accordance with the Settlement Term Sheet, or (d) the U.S. federal income tax status of the Trust as a "liquidating trust"; or (ii) expand, add to, or modify the original stated purpose of the Trust.   Notwithstanding anything to the contrary in this section, any amendments, supplements, or waivers of the provisions of this this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d).

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.01    Intention to Establish Grantor Trust.  This Agreement is intended to create a grantor trust for federal income tax purposes and, to the extent provided by applicable law, shall be governed and construed in all respects as such a trust. Any ambiguity herein shall be construed consistent with that intent and, if necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

8.02    Laws as to Construction.  Except as to formation of the Trust, which shall be deemed effective upon the Effective Date, this Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to the rules governing the conflict of law which would require the application of the law of another jurisdiction.

8.03   <u>Severability</u>.   If any provision of this Agreement or application thereof to any Person, Entity, or circumstance shall be determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons, Entities, or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

8.04   <u>Notices</u>.   Any notice of other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended at the appropriate address set forth below, or such other address as may be provided to the other parties in writing.

      If to the Trustee:

> ENGlobal Liquidating Trust
> Attn: John D. Baumgartner
> 2929 Allen Parkway
> Suite 200 - #1029
> Houston, Texas 77019
> jbaumgartner@getzlerhenrich.com

8.05   <u>Notices if to a Beneficiary</u>.   Subject to any transfer recognized by the Trustee as set forth in Section 3.06 of this Agreement, any notice or other communications hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office box, or transmitted by telex, facsimile or other telegraphic means, or sent by a nationally recognized overnight delivery service, addressed to the person for whom such notice is intended to the name and address set forth in the case of a Beneficiary, on such Beneficiary's Proof of Claim, or if no Proof of Claim is filed, the address listed on the Debtors' Schedules or as listed in any other notice filed with the Bankruptcy Court and, if applicable, the Trust or such other means reasonably calculated to apprise the Beneficiary.

8.06   <u>Headings</u>.   The section headings contained herein are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

8.07   <u>Plan</u>.   The terms of this Agreement are intended to supplement the terms provided by the Plan and the Confirmation Order.   However, in the event of any direct conflict or inconsistency between any provision of this Agreement, on the one hand, and the provisions of the Plan and the Confirmation Order, on the other hand, the provisions this Agreement shall govern and control.

10.08   <u>Entire Agreement</u>.   This Agreement contains the entire agreement between the parties and supersedes all prior and contemporaneous agreements or understanding between the parties with respect to the subject matter hereof.

10.09   <u>Counterparts</u>.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or electronic mail signature of any party shall be considered to have the same binding legal effect as an original signature.

[<em>Signature Page Follows</em>]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first written above.

**ENGLOBAL CORPORATION, et al.**

Signature:_____

Name: <u>John D. Baumgartner</u>_____

As its: <u>Chief Restructuring Officer</u>_____

**ENGLOBAL LIQUIDATING TRUST**

Signature:_____

Name: <u>John Baumgartner</u>_____

As its: <u>Liquidating Trustee</u>_____

**Exhibit C**

**<u>Liquidation Analysis</u>**

**ENGlobal Corporation, et al**
**Liquidation Analysis**
*May 30, 2025*

| Assets | Notes | As of 06.13.25 Est. Book Value | Post-Sale of Automation Assets Chapter 7 | Plan |
|---|---|---|---|---|
| Cash | | | | |
| Operating | (1) | 248,374 | 248,374 | 248,374 |
| Reserves | (2) | 975,081 | 975,081 | 975,081 |
| Prepaid expenses and deposits | (3) | 163,886 | - | - |
| Accounts Receivable | (4) | 171,434 | 34,287 | - |
| Materials, WIP | (5) | 37,215 | - | - |
| Costs in excess of billings | (6) | 1,719,298 | - | - |
| Machinery, financed | (7) | 99,714 | - | - |
| Office Equipment | (8) | 43,000 | - | - |
| | (9) | 3,712,000 | | |
| Receivable Litigation Claim | | | 1,856,000 | 2,412,800 |
| Equitable Adjustment to contract | (10) | 1,300,000 | - | - |
| Avoidance Actions, Preferences | (11) | 2,224,587 | 333,688 | 556,147 |
| **Total Assets** | | **10,694,588** | **3,447,430** | **4,192,402** |
| | | | | |
| **Trust Costs** | | | **Chapter 7** | **Liquidating Trust** |
| Ch 7 Trustee Fees | (12) | | 172,371 | 209,620 |
| Ch 7 Trustee Legal / Accounting / Admin Expenses | (13) | | 75,000 | 150,000 |
| | | | 247,371 | 359,620 |
| | | | | |
| **Total Cash Available for Distribution** | | | **3,200,058** | **3,832,782** |

| Distribution Waterfall | Claims Value | Distributions Chapter 7 | % | Plan | % | Improvement |
|---|---|---|---|---|---|---|
| Administrative Expenses | (14) | - | - | | - | | - |
| Remaining Debtor In Possession Financing  (DIP Loan) | (15) | 1,750,000 | 1,750,000 | 100% | - | 0% | (1,750,000) |
| Professional Fees | (16) | 1,263,081 | 1,263,081 | 100% | 1,263,081 | 100% | - |
| Priority Tax Claims | | tbd | tbd | NA | tbd | NA | - |
| Class 1 - Allowed Priority Non-Tax | (17) | 327,520 | - | 0% | 327,520 | 100% | 327,520 |
| Class 2 - Allowed Other Secured Claims- Leaf | (18) | 12,000 | 12,000 | 100% | 12,000 | 100% | - |
| Class 2 - Allowed Other Secured Claims - US Bank | (19) | 99,714 | 99,714 | 100% | 99,714 | 100% | - |
| *Adj: Class 2 - Allowed Other Secured Claims - US Bank* | (19) | *Non cash* | (99,714) | NA | (99,714) | NA | - |
| Class 3 - Allowed Prepetition Alliance Loan Note | (20) | 2,434,754 | 174,977 | 7% | 2,230,181 | 92% | 2,055,203 |
| Class 4 - Allowed General Unsecured Claims | (21) | 8,367,994 | - | 0% | - | 0% | - |
| Class 5 - Allowed Subordinated Claims | | tbd | tbd | NA | tbd | NA | - |
| Class 6 - Allowed Equity Interests | | - | - | | - | 0% | - |
| **Total Distributions** | | | **3,200,058** | | **3,832,782** | | **632,723** |

**Notes:**

(1)  Prof forma ending cash balance
(2)  Professional Fees incurred but not yet paid; plus $12k reserved for Leaf cure amount
(3)  Office lease security deposit - offset against prepetition balances
(4)  Under Plan, AR assets to be sold to Gulf Island
(5)  Related to Government, under Plan, asset to be sold to Gulf Island
(6)  Related to Government, under Plan, asset to be sold to Gulf Island
(7)  Drill line equipment to be returned to US Bank
(8)  To be sold to Gulf Island under plan
(9)  AIC (North Dakota) Receivable recovery assumed net 50% under Chap 7, and net 65% under Plan
(10)  Army Corp of Engineers Receivable, to be sold to Gulf Island
(11)  Assumed net 15% recovery for Chap 7 and net 25% recovery under Plan
(12)  Assumed 5% of Total Assets
(13)  Administrative and Accounting wind down, reporting and closing of the Estate
(14)  Under Chapter 7, remaining cash is subject to DIP lender's lien.  Under Plan, DIP lien is released and cash is available for creditors.
(15)  Under Plan, DIP Loan to be satisfied through sale of Eng and Govt to DIP Lender
(16)  Professional Fees incurred but not yet paid
(17)  Prepetition Employee PTO for ENG and GOVT
(18)  Cure amount for bandsaw equipment to Leaf Capital
(18)  Drill line collateral to be returned to US Bank
(19)  Non-Cash - Drill line collateral to be returned to US Bank
(20)  Dependent on recoveries from Receivable litigation (AIC/North Dakota)
(21)  Dependent on recoveries from Receivable litigation (AIC/North Dakota)